**In the Matter of Lawrence & Emilyanne HAMILTON, Debtors.**

**Bankruptcy No. 84–2346.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 9, 1985.

Landmark Bank of Tampa, Profit Sharing Plan Trust, c/o Brian M. Ross, Tampa, Fla., for movant.

King & Bryant, P.A., Tampa, Fla., for debtors.

Catherine McEwen, Tampa, Fla., for Jose Vivero.

### ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 13 case and the matter under consideration is an Objection to Confirmation of the Chapter 13 Plan submitted by Lawrence W. and Emilyanne C. Hamilton, the Debtors in the above-styled case. The Objection is interposed by Jose Vivero, as Trustee for Landmark Bank of Tampa Profit Sharing Plan and Trust (Landmark). The right of these Debtors to obtain confirmation of the Plan is challenged by Landmark on the ground that the Plan submitted by the Debtors does not comply with 11 U.S.C. § 1325(a)(1) in that it seeks to modify the contractual rights of Landmark in violation of 11 U.S.C. § 1322(b)(2); that the Plan does not provide for the retention of a lien by Landmark; and that Landmark did not accept the Plan. Lastly, it is the contention of Landmark that the Plan was not proposed in good faith as required by § 1325(a)(3). The facts controlling the controversy, however, are without dispute and can be summarized as follows:

On March 12, 1974, the Debtors executed a mortgage note in favor of Harry V. Wright and Ofelia Wright securing an indebtedness in the principal sum of $54,000. This was a purchase money mortgage and

was duly recorded on May 1, 1975. Mr. and Mrs. Wright later assigned this note and mortgage to Landmark. The original note executed by the Debtors fully matured by its own terms on March 1, 1976. However, in February, 1976 Landmark and the Debtors entered into a modification agreement which extended the maturity date of the note to March 1, 1977. On May 28, 1976, the parties entered into a second modification agreement which further extended the maturity date of the note to April 25, 1977. On September 12, 1977, the note was modified again by agreement of the parties which extended the maturity date to September 1, 1982.

The Debtors defaulted on their obligation represented by the note and mortgage and Landmark filed a foreclosure action on April 19, 1984 in the Sixth Judicial Circuit in and for the County of Pasco, Case No. 84–1129. On September 26, 1984, the Circuit Court entered a final judgment of foreclosure in favor of Landmark and determined that there was due and owing to Landmark $35,413.44 and ordered the property to be sold at a foreclosure sale. On September 26, 1984, the Clerk of the Circuit Court issued a Notice of Sale and scheduled the sale to be held on October 14, 1984.

On October 11, 1984, the Debtors filed their Petition for Relief under Chapter 13. The schedules submitted with the Petition indicated two secured creditors, one mortgage obligation owed to Hometown Federal Savings & Loan encumbering one acre and a three bedroom house and a mortgage indebtedness owed to Landmark encumbering their principal residence. The only other liability indicated by the schedules is attorney fees owed to counsel of record of the Debtors who filed the Petition.

Under the Chapter 13 Plan proposed by the Debtor, they were to pay to the Trustee $2,500 per month, which sum after deduction of the Trustee's fee and expenses, would be paid to Landmark. The Plan fails to indicate for how many months payments are to be made, although it appears that this is an attempt by the Debtors to "cure" the mortgage obligation owed to Landmark within 12 months. The Plan does not deal with any other creditors and obviously is designed for one purpose only, that is, to prevent Landmark from enforcing its mortgage lien through the foreclosure sale and thus, to save the Debtors' homestead.

■ It should be stated at the outset that it can no longer be gainsaid and it is clear that a debtor who seeks relief under Chapter 13 of the Code may not modify the rights of holders of claims secured only by a security interest in real property encumbering the Debtors' principal residence except to cure any default. 11 U.S.C. § 1322(b)(2), (3) and (5). Recognizing the obvious, the Debtors urge that under the controlling laws of this state, a mortgagee may reinstate a mortgage in default even though a final judgment of foreclosure has been entered provided that the property has not been sold and provided that the right of redemption offered by local law has not expired. In support of this proposition, the Debtors cite the case of *Advanced Mortgage Corporation v Willie M. Land (In re Land)*, 8 BCD 90 (N.D.Ohio 1981) and the case of *United Companies Financial Corporation v Clarence W. Brantley and Elizabeth W. Brantley (In re United Companies Financial Corporation)*, 6 BCD 932 (N.D.Fla.1980). Even a cursory reading of these cases leaves no doubt that none of the holdings of the cases support the proposition urged by the Debtors. In *Advanced Mortgage* the Court held that the entire principal sum was due and entered an order of foreclosure. The Court held that under local law, the debtor still had the right of redemption and that the debtor may deal with the mortgage indebtedness represented by a final judgment, but must pay the final judgment in full over the life of the plan. However, the mortgage in *Advanced Mortgage* did not mature by its own terms, but matured only by virtue of a final judgment of foreclosure. The case of *United Companies* equally fails to support the proposition urged by the Debtors because the case involved stay litigation in which the mort-

gage holder sought to obtain relief from the automatic stay. The case did not involve the question of whether or not a plan can be confirmed. Any reference to the applicability of § 1322(b)(2) was by way of dictum and was not relevant to the actual holding of the court entered on the motion which only sought relief from the automatic stay. Moreover, the mortgage involved in *United Companies*, just as the mortgage in *Advanced Mortgage*, did not mature by its own terms before the commencement of the case, but again matured only by virtue of a final judgment of foreclosure.

The cases cited generally for the proposition that a Chapter 13 debtor may deaccelerate a mortgage and cure arrearages even after a final judgment of foreclosure has been entered are *In re Taddeo*, 685 F.2d 24 (2d Cir.1982) and *In the case of Fontaine*, 27 B.R. 614 (9th Cir.App.Panel 1982). In *Fontaine*, the Bankruptcy Appeal Panel for the Ninth Circuit (BAP) held that § 1322(b)(5) dealt only with a debtor's right to cure a default on long term debts, but did not hold that an agreement which provided for the final payment in the nature of a balloon payment is deemed to be a long term debt nor that § 1322(b)(5) can be utilized where the balloon payment has not yet become due at the time of the filing of the Petition. *Taddeo* stands for the limited proposition that the acceleration which occurs only by reason of default in the payment terms of the agreement may be deaccelerated under § 1322(b)(5), but *Taddeo* did not hold that this Section permits a modification of an agreement. The Court in *Taddeo* also concluded that any Chapter 13 Plan which attempted to reduce the amount of the installment payments or attempted to extend the final maturity date of the debt is an attempt to modify an obligation secured by the principal residence of the Debtor which is prohibited by § 1325(b)(2). Neither *Taddeo* nor *Fontaine* involved mortgages which were fully matured by the maturity date fixed by the contract. What is more controlling to the question under consideration are the cases of *In re Seidel/In re Girgis*, 31 B.R. 262 (Bankr.D.Ore.1983) and *Fontaine, supra*, both of which stand for the proposition that any Chapter 13 Plan which attempts to extend the time for making the final installment payment due under the terms of the security agreement does not comply with § 1322(b)(5) and cannot be confirmed. Even more to the point is the case of *Fontaine, supra* where BAP for the Ninth Circuit held that the mortgage obligation which fully matured by virtue of a balloon payment provision of the mortgage prior to the commencement of the case cannot be de-accelerated and then cured and only a default on long term debts are curable under Chapter 13.

Based on the foregoing, it is evident that a debt secured only by a mortgage encumbering only the principal residence of the Debtor which fully matured by its own terms within the meaning of § 1322(b)(5) cannot be cured under a Chapter 13 plan simply because the last payment on the mortgage is due after the date on which the final payment is to be made under the Chapter 13 Plan. The legislative history of the Section leaves no doubt that the curing provision set forth in § 1322(b)(5) was designed to deal only with long term debts secured by a mortgage on the principal residence of the Debtor. Since the Section clearly defines what a long term debt is, there is no doubt that the mortgage obligation which is fully matured by its own terms prior to the commencement of the case cannot be considered to be a "long term debt." H.R. 95–595, 95th Cong., 1st Sess. (1977) at U.S.Code Cong.Ad.Min. News 1978 p. 5787, 6384. For the reasons stated, this Court is satisfied that this Plan cannot be confirmed.

Moreover, this Court is satisfied that the Plan cannot be confirmed for an additional reason, that is, it was not filed in good faith as required by § 1325(a)(3). In this instance, the Debtors received several extensions from Landmark. They filed their Petition for Relief in this Court on the eve of the foreclosure sale for the obvious and sole purpose to prevent Landmark to en-

force its mortgage lien against their residence.

 While it is well established that to save a debtor's home may be a legitimate goal, which may be achieved as part of a Chapter 13 plan provided it forms an incident to the overall attempt by a debtor to adjust debts in general, if the sole purpose of filing is to frustrate the right of a secured creditor to enforce a mortgage, the plan is not proposed in good faith. While Congress refused to define the term "good faith" it has been generally recognized that the basic inquiry should be whether or not under the circumstances of the case it had been an abuse of the provision, the purpose and the spirit of the Chapter. Among the relevant factors to be considered is the debtor's sincerity and motivation in seeking relief under Chapter 13. *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). If the sole purpose of a debtor in submitting a plan is to forestall and preclude a mortgage foreclosure sale of the debtor's residential property in a Chapter 13 case, the plan fails to meet the standards required for confirmation. Chapter 13 was, without doubt, designed for the purpose of enabling a financially distressed individual debtor with regular income to adjust his debts through an extension or a composition plan funded by the future income of the Debtor and not to frustrate legitimate rights of a creditor holding security solely on the principal residence.

These Debtors have no unsecured debts except the monies of the Debtors allegedly owed by them to their attorney. The other secured obligation of the Debtors, that is, obligation owed to other than Landmark, is not dealt with by the Plan nor is the sole so-called debt owed by them to their attorney. It takes no great imagination to conclude, and it is quite clear, that the entire scheme of the Debtors was designed for the sole purpose to frustrate the efforts of Landmark to enforce its mortgage lien and more importantly under the guise of the principle of the right to deaccelerate a defaulted mortgage approved in *Taddeo* as nothing more than an attempt to alter and modify the rights of the secured creditor whose debt is not "a long term debt," the only one which is curable under § 1325(a)(5).

In light of the foregoing, it is unnecessary to consider an additional basic flaw in the Plan which fails to provide that Landmark shall retain its mortgage lien, a proposition which is curable. Based on the foregoing, this Court is satisfied that the Debtors' Plan did not meet the test of § 1325 of the Bankruptcy Code and, therefore, cannot be confirmed. Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Objection to Confirmation of Chapter 13 Plan be, and the same hereby is, sustained and confirmation of the Chapter 13 Plan filed by Lawrence and Emilyanne Hamilton be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DECREED that unless this case is converted within 10 days from the date of entry of this order, the case shall stand dismissed.