**In re JoAnne M. ASHTON, a/k/a JoAnne Margaret Ashton, a/k/a Mrs. Loye Ashton, Debtor.**

**Bankruptcy No. 86–05227.**

United States Bankruptcy Court,
D. North Dakota.

June 6, 1986.

David T. DeMars, Robert Stroup II, Fargo, N.D., for debtor.

Lucia Hand Stellick, trustee.

William P. Westphal, Minneapolis, Minn., U.S. trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on a Motion for Relief from Stay filed by Metropolitan Federal Bank (Metropolitan) on March 28, 1986. The debtor, JoAnne Ashton (Ashton), objects to the requested relief and claims that her Chapter 13 Plan adequately addresses the installment arrearages due Metropolitan. The motion came on for hearing on May 6, 1986. From the evidence produced, the facts as relevant may be summarized as follows:

## FINDINGS OF FACT

The debtor and her husband, Loye Ashton, reside in Williston, North Dakota, where he is employed in the practice of dentistry and the debtor, although a registered nurse, is presently unemployed but seeking employment. Her previous net monthly income was $1,788.00 and her husband's is $7,000.00 per month. Ashton, individually filed for relief under Chapter 13 on March 26, 1986.

She and her husband are the owners of five residential properties located in Williston, North Dakota, a city that has been adversely affected by recent declines in the energy industry. Residential properties in Williston generally take from six months to three years to sell and those over $100,000.00 in value are very difficult to sell. Homes are being presently discounted at a rate of one to one and a half percent per month. The properties themselves consist of four small rental homes and a large custom remodeled home which serves as Ashton's residence. The rental properties are of average to poor condition while the house serving as the debtor's residence is a

very unique over-improved home. A recent appraisal establishes the fair market value for all five properties to be $218,000.00.

The five properties were subject to a first mortgage with Metropolitan dated April 21, 1978, and recorded April 26, 1978, and given to secure a note in the principal sum of $164,500.00 executed by Ashton and her husband. Metropolitan commenced foreclosure proceedings and obtained a judgment of foreclosure on February 13, 1986, in the sum of $158,299.43 inclusive of costs and disbursements plus interest from and after February 5, 1986, at the per diem rate of $37.92. As of June 1, 1986, interest of $4,360.80 had accrued. The redemption period is six months but the sheriff's sale scheduled for March 27, 1986, was stayed by the event of Ashton's bankruptcy filing on March 26.

According to a partial abstract received in evidence, the five properties had additional liens and encumbrances at the time of the foreclosure judgment in the sum of $51,836.44 which includes a lien of $1,862.57 for Workmen's Compensation and $275.95 for state taxes. Subsequent to the foreclosure and subsequent to the bankruptcy filing, additional encumbrances of $16,772.17 have been placed against the properties. The 1985 real estate taxes in the sum of $6,500.00 due in February, 1986, are unpaid as are 1986 real estate taxes of $3,000.00 thus far accrued.

The mortgage foreclosed upon called for monthly payments of $1,408.77 and the Ashtons last payment was in June, 1985. Presently, it would require $34,000.00 to cure the default, inclusive of past due installments, real estate taxes, insurance and costs. Additionally, Metropolitan anticipates additional legal fees of $5,000.00 in consequence of the proceedings subsequent to obtaining the foreclosure judgment.

Ashton, in her hearing testimony, stated that the only reason for filing the Chapter 13 petition was to save her home.

The plan itself acknowledges a default of $10,649.00 existing on the Metropolitan mortgage and upon confirmation, it is proposed that $500.00 per month be paid to the trustee who will accumulate the payments and distribute them quarterly to Metropolitan until the default is cured. All mortgage installments coming due subsequent to confirmation will be paid on a current basis directly to Metropolitan. Metropolitan is the only secured creditor mentioned in the plan with the only other liabilities specifically treated being that of an unsecured obligation of $8,500.00 owing to American State Bank. The total monthly sum being committed to the plan is $736.00 per month over three years which, over the thirty-six months of the plan's existence, totals $18,000.00. The numerous other liabilities which have become judgment liens against the real property are not listed in the debtor's schedules nor dealt with in the plan. Nor does the plan address a debt owing to the First National Bank of Williston in consequence of an auto loan. Indeed, the debtor's schedules reflect only two secured obligations totalling $163,381.00 of which $158,721.00 constitutes Metropolitan's judgment of foreclosure.

## CONCLUSIONS OF LAW

Metropolitan argues that relief is available either under section 362(d)(1) or 362(d)(2).

■ Relief from stay is available under section 362(d)(2) where a debtor lacks equity in the property coupled with a showing that the property is not necessary to an effective reorganization. The facts establish that the five properties are worth $218,000.00 with $240,700.00 of debt presently against them. The value of the properties is eroding while the debt continues to increase. At the present time the liabilities exceed the properties' value by approximately $22,700.00. The debtor has no equity in the property and the first prong of section 362(d)(2) has been met.

■ Whether the property is necessary for an effective reorganization is more difficult to address in a Chapter 13 context. Some cases adhere to the position that this second criteria is inapplicable in Chapter 13 cases. *See generally In re Rhoades*, 34

B.R. 164 (Bankr.D.Vt.1983). Others, however, pointing to the language of section 103(a) of the Bankruptcy Code[1] believe the term is applicable to Chapter 13 but in a somewhat different context. As regards a Chapter 13 case, an effective reorganization means a probability that the Chapter 13 Plan as proposed can be funded in a way which will cure the arrearages. *In re Vieland*, 41 B.R. 134 (Bankr.N.D.Ohio 1984). The antithesis of such capability may not only establish a basis for relief under section 362(d)(2), but may also constitute "cause" for relief under 362(d)(1). Metropolitan argues that the plan as proposed is completely inadequate and that the only purpose for filing in the first place was to prevent the foreclosure sale from going forward. Ashton admits the reason for her filing was to save her home, but suggests that Metropolitan's position is adequately protected because the plan as proposed provides for the curing of arrearages and maintenance of current payments. She also takes the position that the court at this stage of the case ought not critize the plan itself but consider the element of "cause" only in context of adequate protection. If gauged only on that basis, then there would be some equity yet existing due to Metropolitan's first lien position against which inferior lien creditors could not survive. On this basis alone, the facts demonstrate that the indebtedness to Metropolitan of $162,660.00 plus real estate taxes of $9,500.00 leaves an equity of $45,840.00. "Cause", however, as a concept is broad and may extend beyond the one enumerated ground of lack of adequate protection. *In re Rich*, 42 B.R. 350 (Bankr.D.Md.1984). "Cause" for relief from stay may include the element of bad faith on the part of a Chapter 13 plan proponent as well as a flawed plan even though the plan itself has not yet come on for confirmation. A bankruptcy court need not wait until confirmation to consider the motives for filing a petition or the merits of the proposed plan. "*Whenever* a Chapter 13 petition appears

to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives." *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986).

▪ Section 1325(a) of the Bankruptcy Code provides for confirmation of a Chapter 13 Plan if,

> "the plan has been proposed in good faith and not by any means forbidden by law."

This section, says *Waldron*, affords a bankruptcy court with the means to preserve the bankruptcy process for its intended purpose. The good faith test requires examination of the Chapter 13 debtor's intentions in filing, the legal and equitable effect of the proposed plan, whether the debtor has manipulated facts in his plan or otherwise proposed the plan in an inequitable manner. *In re Chinichian*, 784 F.2d 1440 (9th Cir.1986); *In re Goeb*, 675 F.2d 1386 (9th Cir.1982). From these appellate decisions we see that an examination of the debtor's filing motive in the context of the good faith requirement of necessity entails consideration of the plan itself.

▪ Ashton is correct that there is nothing wrong with filing a Chapter 13 petition with the purpose in mind of saving one's home. However, this cannot be the sole purpose. Congress intended Chapter 13 to be utilized by individuals with regular income for the purpose of adjusting the debts of all creditors and repayment of those debts over an extended period of time. A sincere and honest effort to repay all creditors is one of the principle purposes of Chapter 13. *See generally Matter of Myers*, 52 B.R. 248 (Bankr.M.D.Fla.1985). In the instant case, Ashton has not listed all of her creditors and the plan as proposed does not even allude to the many judgment creditors who have liens filed against the five properties. Yet these creditors, whether they are secured or unse-

---

**1.** Section 103(a) provides that Chapters 1, 3 and 5 of this Title apply in a case under Chapter 7, 11 or 13 of this Title.

cured, must not only be revealed in the schedules, but their claims must be addressed by the plan in some fashion. The fact that the only substantial claim addressed by the plan is that of Metropolitan suggests that the motive for filing the petition was solely to forestall the sheriff's sale scheduled for the next day. As noted in *Matter of Hamilton*, 51 B.R. 550 (Bankr. M.D.Fla.1985):

> While it is well established that to save a debtor's home may be a ligitimate goal, which may be achieved as a part of a Chapter 13 Plan provided it forms an incident to the overall attempt by a debtor to adjust debts in general, if the sole purpose of filing is to frustrate the right of a secured creditor to enforce a mortgage, the plan is not proposed in good faith.

*Matter of Hamilton*, 51 B.R., at 554.

Aside from the motives for filing, Metropolitan challenges the debtor's ability to cure, given the amount necessary and the fact that a judgment of foreclosure has been entered. Section 1322(b)(5) of the Bankruptcy Code allows a debtor to cure a default within a reasonable time. There has been considerable disagreement in the courts whether a debtor loses his ability to cure a mortgage default at some stage of the foreclosure process. Metropolitan, placing reliance on *Matter of Tynan*, 773 F.2d 177 (7th Cir.1985) argues that upon entry of judgment the mortgage merges into the judgment and there is thereafter no arrearage left to cure. The *Tynan* case did indeed hold that section 1322(b)(5) is inapplicable after judgment of foreclosure has been entered. However, the Second Circuit's holding in *Tynan* is not easily reconciled with that court's position in its 1984 decision of *Matter of Clark*, 738 F.2d 869 (7th Cir.1984). In *Clark* the court analyzed at some length the right to cure under section 1322(b) and concluded that a debtor could cure defaults in a mortgage notwithstanding the fact that a judgment of foreclosure had been entered. The case lending the most insight to this unresolved debate is *In re Glenn*, 760 F.2d 1428 (6th Cir.1985) which recounts at length the various theories of cure cutoff. The *Glenn* court noted that section 1322(b) provides for no clear cutoff point and that the varying decisions are reflective only of the particular deciding courts value judgment. Obviously, at some point the ability to cure comes to an end. The Sixth Circuit in *Glenn*, after an exhaustive analysis concluded that the cutoff date of the statutory right to cure defaults is the sale of the mortgaged premises. *In re Glenn*, 760 F.2d, at 1435. This result was reached without resorting to state property law or a determination of when a mortgage contract becomes extinguished. Rather, the Sixth Circuit sets out seven pragmatic reasons for its decision. These reasons are persuasive and this court believes the Sixth Circuit's approach in *In re Glenn* is the most reasonable of the cases.

Accordingly, it is held by this bankruptcy court that Ashton may cure the default existing on the Metropolitan mortgage despite the existence of the foreclosure judgment.

Any cure, however, must occur within a reasonable time and must provide for the curing of *any* default. The plan affords treatment for only $10,649.00 at the rate of $500.00 per month which would require twenty-one months to effect a cure. It is questionable whether twenty-one months is a reasonable time within the meaning of section 1322(b)(5). The case of *In re Mueller*, 18 B.R. 851 (Bankr.W.D. Ark.1982), relied upon by Ashton for the proposition that a plan proposal to bring arrearages current may constitute adequate protection, also suggests that the proposed plan be satisfactory and provide for the *"prompt* curing of arrearages." Although the time for cure refers to a time subsequent to the Chapter 13 filing, the case of *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982) suggests that events prior to the bankruptcy may influence what constitutes a reasonable time in a given case. The case of *In re Brooks*, 51 B.R. 741 (Bankr.S. D.Fla.1985) held that the reasonable time

standard of section 1322(b)(5) contemplates a prompt cure.

"To impose upon a lender an additional enforced delay of more than an additional year in curing a default is no nominal inconvenience. It is the equivalent of compelling it to make an unsecured loan without interest to a bankrupt for the interval imposed by the court. An imposition of that magnitude cannot be squared with the Fifth Amendment and cannot have been intended by Congress."

*In re Brooks*, 51 B.R., at 743. This court believes it is appropriate to consider what constitutes a reasonable time on a case-by-case basis and notes that Ashtons have been in default since June, 1985, a period of some twelve months and have failed to pay real estate taxes for the year 1985. Additionally, the property is not particularly well maintained and is suffering a value decline of approximately one to one and a half percent per month. These facts, coupled with the following discussion on the debtor's ability to cure, lead this court to conclude that twenty-one months is not in this instance a reasonable time for cure.

The plan does not account for the true amount it will take to cure the arrearages owing Metropolitan. As established at trial, the sum necessary to satisfy the arrearage, taxes and costs is approximately $34,000.00. Interest alone accrues at the rate of $1,200.00 per month. On top of this, Ashton is expected to make a current mortgage payment of $1,408.77. Simply considering the obligation owing to Metropolitan and the amount committed to that obligation makes the plan unfeasible and renders any confirmation likely to be followed by a material default. This is even more obvious when one recalls the many claims that are not even addressed in the plan and the fact that as of the date of the hearing Ashton was unemployed. Even if her previous income level of $1,788.00 were available, it would be insufficient to fund a plan. Monthly payments required to cure the default and maintain the current obligation to Metropolitan alone would exceed $4,400.00 per month. Additionally, Ashton would have to propose some form of payment to the remaining creditors whose claims are presently unaddressed. Although the debtor's husband has his own income, it has not been suggested either in the plan or at the hearing that any portion of his income is being dedicated towards his wife's Chapter 13 Plan. In sum, the court regards the present plan as incapable of confirmation.

Moreover, from a totality of the circumstances, it appears that the sole reason for filing the Chapter 13 petition was to stave off the foreclosure sale rather than any plausible overall effort on the part of Ashton to generally adjust her debts. Neither the debtor's Chapter 13 statement nor her plan fully disclose the extent of her debts and the plan itself appears to be an obvious effort to address only the obligation owing to Metropolitan, an effort which is insufficient in its funding. This, coupled with the strategic timing of the petition filing, leads the court to conclude that the present petition was not filed in good faith as that standard has been discussed herein. Metropolitan should not be required to stand by with its collateral eroding while the debtor masticates over various amendments and redrafts. The absence of good faith in the filing coupled with a patently unconfirmable plan is sufficient cause under section 362(d)(1) for affording Metropolitan the relief requested.

Accordingly, Metropolitan Federal Bank is granted relief from stay and is free to pursue its remedies at state law.

SO ORDERED.