**In the Matter of Andrew F. DAVIS and Marilyn C. Davis, Debtor(s).**

**Bankruptcy No. 3-86-01085.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 2, 1986.

David R. Wiechel, Kettering, Ohio, for debtors.

George W. Ledford, Englewood, Ohio, trustee.

## DECISION DENYING CONFIRMATION

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(L) in which the debtors seek confirmation of their proposed amended Chapter 13 plan. For the reasons set forth in this decision, the court **DENIES** confirmation of the proposed amended plan and **GRANTS** the debtors fourteen (14) days in which to file a modified plan.

### PROCEDURAL HISTORY

The debtors' original plan proposed a monthly payment of four hundred twenty-six dollars ($426.00) to the Chapter 13 Trustee for a period of thirty-six (36) months with certain specific payments to secured creditors and an amount of "0.0119% to each allowed unsecured claim" (Doc. 1). Objections to this original plan were filed by: General Motors Acceptance Corporation, a secured creditor (Doc. 5), ITT Financial Services, hereafter ITT, a creditor listed as unsecured, who claimed to be secured (Doc. 6) and Huntington National Bank, a partially secured and partially unsecured creditor (Doc. 8). At the hearing on the confirmation of the original plan, these three creditors stated they would withdraw their objections. They have filed entries resolving their individual disputes with the debtors (ITT—Doc. 23, Huntington National Bank—Doc. 24 and General Motors Acceptance Corporation—Doc. 25). The debtors testified concerning their original plan at the confirmation hearing (Transcript, Doc. 11) and requested additional time to propose an amended plan. The debtors' Motion For Extension Of Time To File Amended Plan And Schedules (Doc. 10) recites in part, "[T]he amended plan will provide payment to the Trustee of 100% of the debtors' projected disposable income for the maximum period of sixty (60) months, resulting in a dividend of approximately five percent (5%) to general unsecured creditors."

Thereafter, the debtors filed a Motion For Amendment Of Plan And Schedules, And Confirmation As Amended (Doc. 12). It is this amended plan which is presently before the court for confirmation. It proposes a monthly payment of three hundred twenty-five dollars ($325.00) to the Chapter 13 Trustee for a period of forty-nine (49) months with certain specific payments to secured creditors and "−0−% to each allowed unsecured claim." (Doc. 13). The debtors also filed a Suggestion Of Continued Applicability Of Testimony which provides in part, "Extensive testimony was taken from Debtors at that hearing. [T]hat such testimony should be considered by the Court as applicable to such amended plan and schedules, .... As to the proposed dividend to unsecured creditors, no additional testimony of Debtors would appear to be required,...." (Doc. 20)

Notice of this proposed amended plan was sent to all creditors (Doc. 26). No objections to the amended plan were filed and, following a hearing held September 23, 1986, the court took the matter under advisement.

## ISSUES PRESENTED

The facts presented in this case raise issues which appear frequently in this court and have not been addressed in a decision written by this court following the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAF-JA), Pub.L. No. 98–353. The independent, yet interrelated, issues presented by this case raise: (1) the threshold question of the court's authority to raise and determine, *sua sponte,* confirmation questions under 11 U.S.C. § 1325(a) (good faith) and § 1325(b) (ability to pay), (2) the issue of good faith as it relates to zero or nominal payment plans, (3) good faith as a factor that could constitute cause to extend a plan beyond thirty-six (36) months and (4) other factors, including the debtors' pre-petition conduct and proposed budget, that are considered by the court in the final determination of the good faith of the debtors' proposed amended plan.

While this court is hesitant to add another decision to the multitude of cases discussing good faith under 11 U.S.C. § 1325(a)(3), a review of recent opinions discussing good faith in relation to the specific issues presented in this case may also provide guidance for future plans submitted to this court. While the unique circumstance of every person who proposes a Chapter 13 plan requires that the case receive an individual determination, it is possible to set forth general principles which would be applicable to a great number of the proposed Chapter 13 plans filed in this court.

## DECISION

### I. THE COURT'S AUTHORITY TO ACT *SUA SPONTE* UNDER § 1325(a) AND 1325(b)

The BAFJA amendments to 11 U.S.C. § 1325 added the words *"Except as provided in subsection (b)"* as the introductory phrase to the present 11 U.S.C. § 1325(a)[1] and a new subsection (b),

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) if the debtor is engaged in business, for the payment of expenditures

---

1. (a) Except as provided in subsection (b), the court shall confirm a plan if—

 (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

 (3) the plan has been proposed in good faith and not by any means forbidden by law;

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

 (5) with respect to each allowed secured claim provided for by the plan—

 (A) the holder of such claim has accepted the plan;

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

 (C) the debtor surrenders the property securing such claim to such holder; and

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.

necessary for the continuation, preservation, and operation of such business.

The resolution of the threshold issues concerning the court's authority to raise and determine *sua sponte* the confirmation questions presented in this case is determined by the distinct requirements enacted in subsections (a) and (b) of 11 U.S.C. § 1325.

### A. *SUA SPONTE* CONFIRMATION DETERMINATIONS UNDER § 1325(a)

Is a Bankruptcy Court authorized to raise and determine, *sua sponte*, confirmation questions under 11 U.S.C. § 1325(a), specifically § 1325(a)(3)—"the plan has been proposed in good faith and not by a means forbidden by law"?

■ The determination of whether a proposed plan meets the requirement of 11 U.S.C. § 1325(a)(3) is so integral to the confirmation decision that a court may, subject to the due process requirements of notice and an opportunity to be heard, raise and determine this issue on its own motion. Consistent with the importance of Section 1325(a)(3) to the confirmation process, even in the absence of any objection to confirmation, it has been held that the court *sua sponte* may make the determination of good faith. "The debtor has thus far complied with the terms of the plan and appears in every respect to have proposed it in good faith." *In re Hardy*, 56 B.R. 95, 97 (Bankr.N.D.Ala.1985). *See also In re Festa*, 65 B.R. 85, 86 (Bankr.S.D.Ohio 1986).

■ While a bankruptcy court is unable to acquire or develop evidence on the issue of good faith beyond what is presented as part of the case before it, when the issue appears in connection with the confirmation of a proposed plan, even if an objection to confirmation is subsequently withdrawn, the court cannot ignore the issue once it has been raised. Good faith is essential to the confirmation of every Chapter 13 plan.

The Court of Appeals for the Fifth Circuit stated in *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (1984), "Every bankruptcy statute since 1898 has incorporated literally or by judicial interpretation, a standard of good faith for the commencement, prosecution and confirmation of bankruptcy proceedings (citations omitted)."

The Ninth Circuit's decision, *In re Chinichian*, 784 F.2d 1440, 1442–43 (1986), held that although 11 U.S.C. § 1330(a) authorizes revocation of an order confirming a plan on request of a party in interest, a bankruptcy court may take such an action on its own motion, without a request by any party in interest. The court stated, "Because Section 1325(a)(3) of Title 11 requires the Chinichians to propose their plan in good faith, the bankruptcy court has jurisdiction to revoke a plan if the plan was not filed in good faith, (citation omitted)." The court added, "It would be absurd to hold that the bankruptcy court is powerless to correct a fraud unless first requested by an interested party, and that is not what section 1330 provides."

Similarly, this court states it would be absurd to hold that a bankruptcy court is powerless to prevent a fraud unless first requested by an interested party. Section 1325(a)(3) does not require a pending objection by an interested party for a bankruptcy court to raise and determine *sua sponte* the requirement of good faith in granting or denying confirmation to a proposed Chapter 13 plan. Accordingly, although there is no pending objection to the confirmation of the debtors' amended plan, the court is authorized to determine, *sua sponte*, confirmation under 11 U.S.C. § 1325(a), specifically § 1325(a)(3).

### B. *SUA SPONTE* CONFIRMATION DETERMINATIONS UNDER § 1325(b)

Is a Bankruptcy Court authorized to raise and determine, *sua sponte*, confirmation questions under 11 U.S.C. § 1325(b)?

■ The court holds that in the absence of a pending objection by the holder of an allowed unsecured claim or the Chapter 13

Trustee, the bankruptcy court is not authorized to raise and determine, *sua sponte,* confirmation questions under § 1325(b).

The difference in the court's ability to raise and determine confirmation questions under § 1325(a) and the court's inability to do so under § 1325(b) is based on the pervasive authority of a bankruptcy court to determine "good faith" under Section 1325(a)(3) as a constitutive element in all Chapter 13 cases in which court approval is sought or granted, and the restricted inquiry of a bankruptcy court upon proper motion from a limited class to deny approval to a proposed plan that fails to meet the standards of Section 1325(b)(1). While the participation of allowed holders of unsecured claims in Chapter 13 proceedings is limited, there are two specific opportunities for such participation: § 1329(a)—"At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, ..."; and, § 1325(b)(1)—"If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, ...". As the court pointed out in *In re Greer,* 60 B.R. 547, 555 (Bankr.C.D.Cal. 1986), "If the Chapter 13 Trustee or a creditor contends that a debtor is not proposing sufficient payments to unsecured creditors, such objector should examine carefully the income and expense projections of a debtor to assure the debtor meets the best efforts requirement of Section 1325(b)."

Although following the thread of Congressional intent in the Bankruptcy Amendments and Federal Judgeship Act of 1984 is a difficult task that often provides only slight support for a judicial determination,[2] nevertheless, the wording of § 1325(b) evidences a specific Congressional determination that the requirement for compliance with the standards of this section can only be raised by a restricted class of claimants. Collier suggests,

> The language of the provision and legislative history makes clear that, unlike the confirmation standards of section 1325(a), the ability-to-pay test may not be raised by the court *sua sponte,* nor may it be raised by the holder of only a secured claim or the holder of a claim which has not been allowed. It may be raised only by the trustee or by the holder of an allowed unsecured claim. (footnotes omitted) 5 *Collier On Bankruptcy,* ¶ 1325.08[2] (15th ed. 1986).

Accordingly, since there is no pending objection by the Chapter 13 Trustee or the holder of an allowed unsecured claim, the court cannot, *sua sponte,* deny confirmation under § 1325(b) to the debtors' amended plan.

## II. ZERO OR NOMINAL PAYMENT PLANS AS A FACTOR IN CONFIRMATION UNDER § 1325(a)(3)

**Is a bankruptcy court authorized to deny confirmation pursuant to § 1325 (a)(3) to a proposed Chapter 13 plan if the sole reason for denial is the nominal payment or the absence of any payment to allowed unsecured claims?**

The proper resolution of this question requires an analysis of 11 U.S.C. § 1325(b) which was enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The provisions of 11 U.S.C. § 1325(b) referred to as the "ability to pay" test was hailed by text writers[3] and courts[4] as the Congressional resolution of

---

**2.** "The new Act has a number of conflicting provisions and is confusing to say the least.... [A]nd there is no House or Senate Report of any kind and no Conference Report...." *In re White Motor Credit,* 761 F.2d 270, 271 (6th Cir. 1985)

**3.** "The new amendment thus clarifies that the 'good faith' standard of Section 1325(a)(3) does not set any minimum amount or percentage of payments that must be made to unsecured creditors, and will allow courts to once again give to the term 'good faith' its traditional historical interpretation. (citations omitted)" 5 *Collier On Bankruptcy* § 1325.08[1] (15th ed. 1986)

**4.** "Thus, where the requirements of the § 1325(b) 'ability-to-pay' provisions are met, this court need not further inquire into the degree of substantially of repayment of unsecured debt

the frequent judicial inquiry—"Does a Chapter 13 plan require that a minimum amount or a minimum percentage be paid to creditors in order to receive confirmation under 11 U.S.C. § 1325(a)(3)?".[5] While it may be concluded that the amount or percentage of distribution to a unsecured creditor is simply a factor, and standing alone not the determinative factor, in confirming a proposed Chapter 13 plan,[6] and section 1325(b) provided clarification of that issue; it is an overstatement to declare that 1325(b) resolved the judicially perceived tension between the issue of good faith and the confirmation of nominal or zero percentage plans.

"A sincere and honest effort to repay all creditors is one of the principle purposes of Chapter 13. *See generally Matter of Myers*, 52 B.R. 248 (Bankr.M.D.Fla.1985)" *In re Ashton*, 63 B.R. 244, 247 (Bankr.D.N. D.1986); "Thus, a plan which provides a token payment to creditors who were wronged by the debtor is a plan deemed to be filed in bad faith and cannot be confirmed under § 1325 of the Code." *Matter of Wall*, 52 B.R. 613, 616 (Bankr.M.D.Fla. 1985).

As the court in *In re Jones*, 55 B.R. 462, 465 (Bankr.D.Minn.1985) noted, "Chapter 13, it states, 'contemplates a substantial effort by the debtor to pay his debts'; and furthermore, '[s]uch an effort may require some sacrifices by the debtor.' S.Rep. No. 6598 Cong. 1st Sess. 22 (1983)" The court also articulated the judicial perceived need to accommodate competing Congressional policies enacted in Chapter 13 of Title 11, when it stated, "Furthermore, as I see it, the purpose of Chapter 13 is to provide the maximum recovery to creditors while at the same time leaving the debtor sufficient money to pay for his or her basic living expenses." *Id.* at 466.

It oversimplifies the case by case accommodation required between a debtor's retention of assets and a creditor's receipt of payments to suggest that 11 U.S.C. § 1325(b) provides a resolution of this tension. Section 1325(b) simply posits a different question than § 1325(a) in connection with the confirmation of a zero or nominal payment plan. Rather than asking the previously difficult "good faith" question, it raises the prospectively difficult "ability to pay" question. As the court in *Jones*, 55 B.R. at 465, observed,

There appear to be no cases dealing with section 1325(b)(2)(A) or the standard to be applied thereunder. Furthermore, the legislative history to Section 1325(b) is singularly vague and unenlightening. As a result, the immediate question is what standard is to be applied in determining the portion of a debtor's income that is not reasonably necessary for the maintenance or support of the debtor or the debtor's dependent.

The legislative history, such as there is, expressly leaves the development of an appropriate standard to the courts.

 Accordingly, this court concludes that confirmation of the debtors' amended Chapter 13 plan may not be denied solely on the basis that it proposes a nominal or zero distribution to allowed unsecured claims.

The concluding language from the court in *Greer*, 60 B.R. at 556, is instructive in this regard,

extends at least 36 months, and all of the disposable income is allocated to the plan. (citation omitted)" *In re Greer* 60 B.R. at 552.

under the plan as a factor in assessing the 'good faith' of a chapter 13 plan under § 1325(a)(3)." *In re Red* 60 B.R. 113, 116 (Bankr.E.D.Tenn. 1986)

"Among the amendments to the Bankruptcy Code enacted in 1984 in BAFJA was a new subsection of 1325....

This statutory provision solves both the problem of excess disposable income and the problem of unreasonably short plans. Under this provision an unsecured creditor cannot be compelled to accept zero payments unless the plan

5. *See In re Heard* 6 B.R. 876 (1980) Appendix, 885 for a collection of cases disapproving nominal payment plans and Appendix, 886 for a collection of cases approving nominal payment plans. *See also Greer*, 60 B.R. at 551, n. 6.

6. *See In re Red*, 60 B.R. at 115 for a collection of decisions from various Circuit Courts of Appeal.

The court does not suggest that Chapter 13 plans that provide zero payment to general unsecured creditors should become the rule, or even that they should be frequent. In the vast majority of cases, the best efforts requirements of section 1325(b) will provide at least some payments to unsecured creditors. In most of the remaining cases the debtors will not be able to repay secured debt arrearages (because the Court requires debtors to repay arrearages on secured debt over 36 months), and confirmation must be denied under section 1325(a)(6). Only the most marginal Chapter 13 case will involve a 36–month plan that provides zero payment to general unsecured creditor.

Another concern that is frequently raised in confirmation proceedings, particularly in connection with zero or nominal payment plans, is the length of proposed plan under 11 U.S.C. § 1322(c)—"The plan may not provide for payments over a period that is longer than three (3) years, unless the court for cause, approves a longer period, but the court may not approve a period that is longer than five years." Obviously, a distribution to allowed unsecured claims can usually be made, or at least increased, if a thirty-six (36) month plan is extended to sixty (60) months. This issue of "cause to extend" is considered in the following section.

## III. CAUSE TO EXTEND A PROPOSED PLAN BEYOND THIRTY–SIX (36) MONTHS UNDER § 1322(c)

**Would an objection by a creditor holding an allowed unsecured claim or the Chapter 13 Trustee that a proposed plan could provide some distribution to allowed unsecured claims, or an increased distribution to allowed unsecured claims, if the plan were extended beyond three years, constitute cause pursuant to § 1322(c) to extend a proposed plan if such an extension has not been requested by the debtor?**

In *Greer,* the court *sua sponte* reduced a plan proposing a one percent (1%) distribution to unsecured claims to zero percent (0%) and confirmed the plan over the Chapter 13 Trustee's objection that the plan was not filed in good faith since such a nominal (or zero) payment plan was proposed for only thirty-six (36) months and could pay a higher dividend to unsecured creditors if it was proposed for sixty (60) months.

The court in *Greer* noted, " 'Cause' under section 1322(c) is not defined in the Bankruptcy Code: Congress left it to the courts to determine its dimensions in the light of experience and in the context of particular cases. (citation omitted)". *Id.* at 555.

The court stated in *In re Festa,* 65 B.R. at 86,

Although § 1322(c) does not define "cause", and an exhaustive definition has not yet been developed by the courts, case law has held that a debtor's desire to preserve a subsequent discharge pursuant to § 727(a)(7) of the Bankruptcy code by payment of a 100% or 70% dividend to unsecured creditors rises to the level of cause. (citation omitted). Likewise, the necessity of accommodating certain unanticipated post-confirmation court-approved interruptions in plan payments has been found to be cause. (citation omitted). Other compelling reasons, not yet adopted or advanced, may also exist.

These holdings are consistent with a Congressional intent to recognize the individual dignity of all parties who file bankruptcy to, within the requirements of Title 11, direct their own destinies (11 U.S.C. § 707(b), § 1121, § 1221, and § 1321) and to be free from the the lengthy duration of plans previously ordered by bankruptcy courts under Chapter XIII of the Bankruptcy Act. Congress considered some of these lengthy plans (seven to ten years) to be in the nature of involuntary servitude. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. Admin.News, 1978, pp. 5787–6078.

In *Greer,* 60 B.R. at 555, it was the trustee and not the debtor who requested that the plan be extended for more than

thirty-six (36) months. The court denied the request stating,

> If such payment were to qualify as 'cause'; the Chapter 13 Trustee could routinely object to all such plans, and the three-year Chapter 13 plan would become the exception rather than the rule. This is surely not a legitimate interpretation of section 1322(c), which contemplates that the three-year plan will be the rule.

In *Festa*, 65 B.R. at 86, however, it was the debtor and not the Chapter 13 Trustee, or the holder of an allowed unsecured claim, who proposed to extend the plan beyond thirty-six (36) months. The court stated,

> [T]he debtor, at the hearing on confirmation of his plan, indicated through his counsel that his desire to increase the dividend paid to his unsecured creditors and the best effort his plan represented was cause to extend the completion of his thirty-six percent (36%) plan to a period of sixty (60) months.

The court concluded, "Whatever 'cause' may be, however, a debtor's desire to increase the dividend paid to his general unsecured creditors, without more, does not rise to the required level for exceeding the prescribed 36 month period." *Id.* at 86–87.

*Collier* suggests,

> The usual reason for extension of plan payments beyond three years is the debtor's inability to cure a default under Section 1322(b)(5) or to pay priority or allowed secured claims in a shorter time (footnote citations omitted). Extensions up to the five years maximum should be allowed without difficulty in such circumstances, since without them the debtor may be unable to obtain effective relief under Chapter 13. 5 *Collier on Bankruptcy*, § 1322.15 (15th ed. 1986)

■ This court concludes it is equally consistent with a Congressional intent to recognize the dignity of all parties who file a bankruptcy proceeding to find a debtor's "sincere and honest effort to repay all creditors" *Ashton*, 63 B.R. at 247 and "to pay his debts", *Jones*, 55 B.R. at 465 constitute cause pursuant to 11 U.S.C. § 1322(c) to extend a plan beyond thirty-six (36) months. The "ability to pay" standards of 11 U.S.C. § 1325(b) provide specific standing for the Chapter 13 Trustee and holders of allowed unsecured claims to be certain that a debtor is contributing the amount Congress has required in the payment of a proposed Chapter 13 plan. Section 1325(b) does not limit a debtor from contributing more than the Congressionally mandated amount, nor does it prohibit a debtor from making a contribution for a period longer than three (3) years.

■ Accordingly, the court holds that while neither the Chapter 13 Trustee nor the holder of an allowed unsecured claim can require a debtor to pay the amount mandated under § 1325(b) for a period in excess of thirty-six (36) months in order to provide some dividend, or a greater dividend, to unsecured creditors than the dividend they would have received from a thirty-six (36) month plan, the debtors' proposal to pay the amount required under § 1325(b), or an otherwise confirmed amount, for a period in excess of thirty-six (36) months does constitute cause pursuant to § 1322(c) to extend a proposed plan for any period, including the maximum period of sixty (60) months. Accordingly, the proposed amended plan of the debtors herein satisfies the required cause and may be extended beyond thirty-six (36) months.

Lastly, whether the debtors' proposed amended plan can be confirmed by this court requires an examination of factors other than those discussed thus far. It requires an examination of all relevant factors to reach a final determination of whether or not the plan has been proposed in good faith.

## IV. OTHER FACTORS IN DETERMINING CONFIRMATION UNDER § 1325(a)(3)

■ **In the final determination of whether a plan has been proposed in good faith, a bankruptcy court is authorized to consider the debtors' pre-petition conduct,**

the debtors' proposed budget, the listing of the debts scheduled by the debtors and any other relevant factors that would evidence dishonest or questionable conduct by the debtors.

The *Greer* decision properly states that in deciding the issue of good faith the court must consider all relevant factors.

This determination must be made on a case by case basis, and all relevant factors must be considered. [In re] *Goeb*, 675 F.2d [1380] at 1390. No complete list of the relevant considerations has been made. However relevant factors may include whether the debtor has misrepresented the facts to the court or failed to disclose relevant facts (such as prior bankruptcies), and whether the debtor has unfairly manipulated the Bankruptcy Code.

Nominal or zero payment to general unsecured creditors may be evidence of bad faith. However, other evidence of bad faith is required to justify the denial of confirmation of a proposed Chapter 13 plan. In this case neither the Chapter 13 Trustee nor any creditor has brought forth any other evidence of bad faith. In consequence, the Court finds that the plan has been proposed in good faith. (citations omitted) 60 B.R. at 554.

The significant differences between *Greer* and the present case are found in the other evidence of bad faith demonstrated by the debtors' pre-petition conduct, the debtors' proposed budget, the scheduling of debts and the payments proposed in this amended plan.

## A. GOOD FAITH AND THE DEBTORS' PRE–PETITION CONDUCT

There were three objections to confirmation filed to the debtors' proposed original plan. Each objection raised the issue of good faith in addition to other grounds: "[T]his court should find that the debtor's plan is not proper in a Chapter 13 proceedings [sic]." (GMAC, Doc. 5, at 2); "In other words Debtors are taking refuge under Chapter 13 to pay only the amount necessary on nondischargeable claims leaving at best one percent (1%) to be paid to all other unsecured claims. [I]f this were a case under Chapter 7 Movant's claim would be nondischargeable pursuant to § 523(a)(2), as debtors grossly mistated [sic] their total indebtedness at the time they gave their written statement to Movant." (ITT, Doc. 6, at 2); "(2) The plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3)" (Huntington Bank, Doc. 8, at 2).

Of these objections, all of which were withdrawn in connection with the proposed original plan and not filed again as objections to the debtors' proposed amended plan, the objection of ITT, a creditor holding an allowed secured claim and an allowed unsecured claim (Doc. 26), raised several questions concerning the good faith of the proposed original plan which remain present in the proposed amended plan.

The debtors obtained a loan from ITT on October 1, 1985. They executed their Chapter 13 schedules on March 7, 1986 and filed their petition on April 28, 1986. The objection of ITT stated;

"The net balance owing Movant as of the date of the petition is $4,229.06. Movant's claim is scheduled as disputed ...." "[A]s the debtors have scheduled Movant as an unsecured creditor, when in fact ITT is secured." "[W]hen debtors made application for this particular loan they indicated that their total indebtedness was $52,000.00. The schedules filed in the Chapter 13 indicated indebtedness exceeding $112,000.00, which does not take into account the claim of Movant herein." (Doc. 6, at 1).

At the time of the confirmation hearing on the proposed original plan, Mr. Davis testified that the information on the attachments to ITT's proof of claim filed May 28, 1986 was supplied by him to ITT and that the original documents contained his signature and his wife's signature. He further testified that in some instances the information was entered on the forms in the handwriting of an ITT employee (Tr. at 25–29) and in some instances was his own handwriting (Tr. at 29–31). He testified

that his failure to list some sixty thousand dollars ($60,000.00) in debts was due to the hurried nature of the loan application process (Tr. at 30–31) and that the difference in the valuation of the debtors' household goods on the ITT forms and the Chapter 13 schedules was due to misunderstandings by both ITT and the debtor in the valuation of these assets at the time of the loan (Tr. at 27–29), which was clarified by the debtors' subsequent valuation based on a "sale" of these household goods. (Tr. at 33–37). The household goods were valued by the debtors on the attachment to the ITT proof of claim form as individual items that totaled four thousand, five hundred thirty-nine dollars ($4,539) and on the same form in the summary of the assets section at ten thousand dollars ($10,000.00). The household goods appear on the debtors' original Chapter 13 schedule at four hundred dollars ($400.00) and on their amended Chapter 13 schedule at "eight hundred dollars ($800.00) (value not subject to chattel mortgage)" (Doc. 13 at 8) and "fifteen hundred dollars ($1,500.00) chattel mortgage" (Doc. 13 at 2).

As the court stated in *Matter of Wall*, 52 B.R. at 616,

> The burden of proof to establish that a Plan is proposed in good faith is squarely on the Debtor. This burden is especially heavy if a debtor seeks to obtain the benefits of a "superdischarge" available in Chapter 13 and some or most of the debts sought to be discharged are creations of fraud or otherwise wrongful conduct. While is is clear that a Debtor in this situation is not absolutely precluded from obtaining confirmation, the Plan must clearly represent his very best efforts. Anything less will simply not suffice.

Although this questionable pre-petition conduct of the debtors would not always bar confirmation of a proposed Chapter 13 plan, nor, standing alone, would it necessarily bar confirmation of the debtors' proposed amended plan herein, it is a factor that, under § 1325(a)(3), weighs against confirmation of this proposed plan.

## B. GOOD FAITH AND THE DEBTORS' BUDGET

 While this court has no desire to suggest any interpretation of a Code section that would increase the workload of an already overburdened bench, the court holds that, in the resolution of conflicting Congressionally enacted and judicially determined Chapter 13 goals, a bankruptcy court is authorized, *sua sponte*, to *consider* the standards of 1325(b) in granting or denying confirmation pursuant to 11 U.S.C. § 1325(a)(3).

Although the resolution of this issue may appear to contradict the resolution of the threshold issue concerning the court's lack of authority to *sua sponte* consider confirmation questions under § 1325(b), its application to the facts of this case may help to clarify the result it would require.

The testimony disclosed that the debtors have two children and Mrs. Davis has not worked outside the home since 1978 when she had her first child. She has no intention at the present time of seeking any full time or part-time employment outside the home (Tr. at 14, 15). The debtors' budget contains an item of fifty-eight dollars ($58.00) for nursery school for three mornings a week from September through June for the debtors' three year old daughter. During this time the debtors' older daughter is in school. Mrs. Davis is home alone (Tr. at 20). The debtors testified that Mrs. Davis provides assistance to Mr. Davis in connection with his employment, "yes, she helps out occasionally, maybe an hour a week, hour and a half ..." (Tr. at 21). The debtors testified that they spend fifty dollars ($50.00) per month for newspapers, periodicals, magazines, and subscriptions in connection with Mr. Davis's employment and school books for the children (Tr. at 17). They also stated they reduced their church contribution pledge by almost forty dollars ($40.00) per month (Tr. at 21) to its present forty-six dollars ($46.00) per month. The debtors' budget provides thirty dollars ($30.00) per month for recreation and entertainment. These expenditures to-

tal one hundred eighty-four dollars ($184.00) per month or at least nine thousand sixteen dollars ($9,016.00) over the projected life of the proposed plan.

If these expenditures, which in this case are arguably not "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" within the meaning of 11 U.S.C. § 1325(b)(2), *In re Jones*, 55 B.R. at 466–67, *In re Sturgeon* 51 B.R. 82, 83 (Bankr.S.D. Ind.1985), *In re Red*, 60 B.R. at 116, were the only concerns of this court, since there is no pending objection filed by the limited class designated in Section 1325(b)(1), these expenditures would not be a proper subject for inquiry by the court, nor could the court deny confirmation to the debtors' amended plan solely on this basis.

■ While allocations in a debtor's budget for newspapers, periodicals, books, religious and other charitable contributions, recreation and entertainment have often been found by this court to be reasonably necessary, and may properly be proposed as part of counsel's advocacy for a client, their presentation as an appropriate category of expense does not guarantee their approval in a specific amount. Although the court agrees "It is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan." *In re Otero*, 48 B.R. 704, 708 (Bankr.E.D.Va.1985), the debtors' income and expenditures can, however, be *considered* by the court in determining whether the plan has been proposed in good faith. As this decision's initial analysis indicates, good faith is a continual circumscription in every bankruptcy case. Its scope of inquiry extends to all proposed plans seeking court confirmation and is often intensified by Chapter 13 plans that propose to pay allowed unsecured claims zero or single digit percentage distributions. The examination under § 1325(b) of expenditures which severely impair, or totally eliminate, a debtor's ability to pay any distribution, or result in the payment of a single digit distribution to allowed unsecured claimants, is a recognized, although not yet widely reported, factor in assessing the good faith of a proposed Chapter 13 plan. *In re Kitson*, 65 B.R. 615, 618–22 (Bankr.E.D.N.C.1986).

As the court observed in *Matter of Kelley*, 58 B.R. 927, 930 (Bankr.D.Del.1986),

Misrepresentation of their assets and of the amount of income available after expenses for distribution to creditors makes any attempt to determine whether the proposed plan meets the requirements of § 1325(a)(4) and (b)(1) meaningless.... The amended plan is not a good faith effort to pay creditors; therefore, confirmation must be denied.

Again, while the debtors' income and expenditures, in the absence of an objection by the Chapter 13 Trustee or the holder of an allowed unsecured claim, could not be a basis to deny confirmation, it can be considered, *sua sponte*, as a factor in determining good faith and in this case is a factor that, under § 1325(a)(3), weighs against confirmation of this proposed plan.

### C. GOOD FAITH AND THE DEBTORS' SCHEDULING OF DEBTS

The debtors listed five thousand three hundred dollars ($5,300.00) in priority debts (tax claims) not disputed, contingent or unliquidated, although both the debtors and their attorney declared these figures were "estimates" and the actual amounts were not yet determined. (Tr. at 23–24). The characterization of these estimated priority debts stands in stark contrast to almost every other debt scheduled by the debtors, all of which were listed as disputed, contingent and unliquidated in the initial plan. (Tr. at 5–8) The amended plan does remove the description contingent from most scheduled debts. There are two unsecured debts, Multimate Corporation—twenty thousand dollars ($20,000.00) and Safeguard Business Systems—sixteen thousand eight hundred dollars ($16,800.00), which continue to be listed as disputed. While the amount ultimately paid to these or other disputed claimants (Bankr.R. 3002–3007) would not be a determining factor in deciding the issue of good faith, the debtors'

amended plan proposes that no payments are to be made to any allowed unsecured claim, even if such a distribution could be made, or increased, as a result of unsecured claimants who (1) do not file a proof of claim, (2) whose disputed claim is determined to be less than the amount scheduled, or (3) whose claim is otherwise disallowed in part or in whole. While actions of the Trustee or the confirmation order of this court could require specific payments for the minimum thirty-six (36) month period, neither the original nor the amended plan proposed by the debtors for confirmation by this court contained such provisions. This matter standing alone could seldom be the basis for denying confirmation of a proposed Chapter 13 plan; however, in the circumstances of this case, it is another factor that, under § 1325(a)(3), weighs against confirmation of this proposed plan.

The Sixth Circuit noted in one of the early appellate decisions discussing Section 1325(a)(3) (1978), *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427, 431–32 (1982) that,

> The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously, the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan.

This good faith requirement continues to receive similar appellate concern, such as the 11th Circuit's opinion, *In re Waldron,* 785 F.2d 936, 941 (1986), which states,

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistak-

able manifestations of bad faith, as we do here, confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

The debtors, in the period six (6) months prior to filing their Chapter 13 petition engaged in wrongful conduct in misstating their debts and assets. Their budget contains items which could clearly be found not reasonably necessary for themselves or their dependants. Their proposed plan provides no distribution to allowed unsecured claims, even if those claims, disputed and otherwise, are significantly less than the amount listed on the debtors' schedule; while at the same time, their plan proposes full payment of all priority claims in whatever amount these priority claims are determined to be. The combination of all of these factors constitutes questionable conduct, a desire to manipulate the Bankruptcy Code and evidence of bad faith that cannot receive this court's approval.

Accordingly, the court **DENIES** confirmation of the debtors' proposed amended plan and **GRANTS** debtors fourteen (14) days in which to propose a modified plan or this case **SHALL BE DISMISSED.** An order in accordance with this decision is simultaneously entered.

**SO ORDERED.**