**In re Michael Herbert STEIN, Linda Carol Stein, Debtors.**

**Bankruptcy No. 2–88–01057.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

June 7, 1988.

Nora E. Jones, Isaac, Brant, Ledman & Becker, Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Trustee.

## OPINION AND ORDER DENYING CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court following a hearing held to consider confirmation of the Amended Chapter 13 Plan ("Plan") filed by Michael P. Stein and Linda Stein ("Debtors"). The confirmation hearing was held in this case on May 10, 1988, following which the Court took under advisement the issue of the confirmability of the Plan.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(L). The following opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Findings of Fact*

The Plan provides for monthly payments of $860, which will result in full payment of allowed secured and priority unsecured claims, and a dividend of 10% to holders of allowed unsecured claims. A period of 60 months will be required for the Plan's completion. The Plan provides for the rejection of a lease agreement with Jack Schmidt Lease, Inc. ("Schmidt Lease") under which Debtors lease a 1985 Oldsmobile Cutlass. In addition, the Plan contains the following provision which will allow the Debtors to enter into two new leases:

6. Debtor(s) will have authority, without further notice and/or hearing, to enter into executory contracts for the lease of two automobiles if the leases have a term of 48 to 60 months, aggregate monthly lease payments of no more than $465.00, and no balloon payment or obligation to purchase. Debtors will thus reduce, from $598.00 to $465.00, their monthly automobile lease payments.

According to their Chapter 13 statement, Debtors' combined monthly net income is $5,367. Dr. Stein is employed by Tuckerman Optical Co. ("Tuckerman") as an optometrist. Mrs. Stein, too, is employed by Tuckerman as Director of Merchandise. The Debtors support three dependent children: a daughter, age 15, and two sons, ages 13 and 11. The Debtors' Amended Chapter 13 Statement lists the following

estimated average of future monthly expenses:

| | | |
|---|---|---|
| (1) | Home mortgage payment | $1,433 |
| (2) | Utilities | 340 |
| (3) | Food | 780 |
| (4) | Clothing | 250 |
| (5) | Laundry and cleaning | 100 |
| (6) | Newspapers, periodicals, and books (including school books and supplies) | 45 |
| (7) | Medical and drug expenses | 200 |
| (8) | Insurance (not deducted from wages) | |
| | (a) Auto | 100 |
| | (b) Other (Life) | 325 |
| (9) | Transportation (leases, gasoline, repairs, parking) | 700 |
| (10) | Recreation | 50 |
| (11) | Dues, union, professional, social or otherwise (not deducted from wages) | 75 |
| (12) | Taxes (not deducted from wages) | — |
| (13) | Alimony, maintenance, or support payments | — |
| (14) | Other payments for support of dependents not living at home | — |
| (15) | Religious and other charitable contributions | — |
| (16) | Other: home maintenance and personal/household emergencies; accountant | 70 |
| | TOTAL | $4,468 |

The Chapter 13 trustee ("Trustee") filed his "First Revised Chapter 13 Trustee's Recommendations" ("Recommendation") on May 10, 1988. The Recommendation delineates certain deficiencies in the Plan which, in the Trustee's opinion, impede confirmation. Most of the items set forth in the Recommendation relate to minor procedural infirmities in the Plan and accompanying schedules. According to Debtors' counsel, these procedural deficiencies have been cured in the Amended Chapter 13 Statement filed with the Court on April 29, 1988.

The Recommendation also contains a substantive concern: whether Debtors have proposed the Plan in good faith. At the hearing, the Trustee argued that the Debtors' rejection of the Schmidt Lease and intention to enter into two new leases constitutes bad faith, apparently on the ground that the Debtors are essentially asking the unsecured creditors to finance two replacement new cars which are not reasonably necessary for the maintenance or support of the Debtors or their dependents.

### III. *Legal Discussion*

### A. Status of Recommendation as an Objection to Confirmation

■ The initial matter for determination by this Court is whether a negative recommendation by the Trustee should be viewed as a formal objection to confirmation. In its previous decision in *In re Ilich*, No. 2-87-03060, slip op. at pp. 3-5 (Bankr.S.D. Ohio December 21, 1987) [1987 WL 49350] this Court concluded that the Trustee's negative recommendation could not be considered as an objection to confirmation on the following basis:

The Court finds that the Trustee's objection to the confirmation of debtors' Chapter 13 plan of the debtors is not before the Court in its proper procedural posture. LBR C-3.18.5 governs objections to confirmation and provides as follows:

Objections to confirmation of a plan must be in writing and must specifically set forth the statutory grounds upon which the objections are based. Unless such objections must be filed with the Court and served upon the Trustee, the debtor and the debtor's attorney at least three (3) days prior to the meeting of creditors or ten (10) days prior to confirmation, whichever is later. Unless the Court orders otherwise, objections to confirmation will be heard at the time of the hearing on confirmation.

The Recommendation filed by the Trustee clearly does not constitute a proper objection to confirmation in the view of

this Court. The Recommendation does not set forth the statutory ground upon which the Trustee's objection to confirmation is based.... Further, the Trustee's Recommendation also was not filed within ten (10) days prior to the hearing as required by LBR C–3.18.5.

....

Thus, the Court holds that the Trustee, like any other party-in-interest, must comply with the Court's procedural guidelines in lodging objections to confirmation.

■ In the instant case, the Trustee's Recommendation is not an objection to confirmation because it does not comply with the requirements of LBR C–3.18.5 or B.R. 3020(b)(1), which is the national rule concerning objections. It is, therefore, simply an advisory recommendation. However, even if the Court were to treat the Trustee's Recommendation as an objection to confirmation, it would not be sustainable. The Trustee asserts that Debtors' proposed rejection of the Schmidt Lease is indicative of Debtors' bad faith because the Debtors are rejecting a year-old lease on a 1985 model car in favor of two automobile leases which, together, will require an aggregate monthly payment of $465 or less. The Court finds this assertion to be untenable for several reasons. First, the Trustee has provided no support, evidentiary or otherwise, for his contention. While the Debtors bear the ultimate burden of persuasion on the issue of compliance with the confirmation criteria contained in 11 U.S.C. § 1325(a), an objecting party must meet the initial burden of producing evidence in support of his objection. *See, Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987); *In re Fries*, 68 B.R. 676, 685 (Bankr.E.D.Pa.1986); *Matter of Cruz*, 75 B.R. 56, 57 (Bankr.D.P.R.1987). *Cf., In re Mendenhall*, 54 B.R. 44, 45–46 (Bankr.W.D.Ark.1985). Here, the Trustee has provided no support for his assertion that the Debtors' treatment of various automobile leases, past or prospective, constitutes bad faith. Absent evidence of bad faith, the Court is inclined to accept Debtors' rejection of the Schmidt Lease, and intention to enter into two leases for auto-

mobiles, at face value—*i.e.*, as merely an attempt to reduce the Debtors' total monthly expense attributable to vehicle lease payments. Accordingly, based on the record made at the hearing, the Court concludes that the Debtors' proposed rejection of the Schmidt Lease and entry into two new leases for vehicles does not violate 11 U.S.C. § 1325(a)(3).

**B. Compliance With The Good Faith Standard of 11 U.S.C. § 1325(a)**

Having determined that there are no pending objections to confirmation, the Court, nevertheless, has an independent duty to ensure that the Plan meets all the requirements for confirmation as set forth in 11 U.S.C. § 1325(a), including the good faith standard of § 1325(a)(3). *In re Bowles*, 48 B.R. 502, 505 (Bankr.E.D.Va. 1985); *In re Harris*, 62 B.R. 391, 393 n. 1 (Bankr.E.D.Mich.1986). Based upon its independent review of the Plan, the Court concludes, albeit for a different reason than that asserted by the Trustee, that the Plan is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

Specifically, the Court finds that the Debtors' estimated monthly expenditures, set forth in their proposed budget, exceed expenses which are reasonably necessary for the maintenance and support of Debtors or their dependents. Relevant to the Court's inquiry is 11 U.S.C. § 1325(b)(1), which imposes the following requirements if there is an objection to confirmation:

■ Section 1325(b)(1) of the Code provides as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first pay-

ment is due under the plan will be applied to make payments under the plan. Section 1325(b)(1) represents Congress' attempt to statutorily resolve issues relating to the appropriate minimum requirements for funding a Chapter 13 plan from a debtor's post-petition income. *See, In re Pierce,* 82 B.R. 874, 879 (Bankr.S.D.Ohio 1987); *In re Navarro,* 83 B.R. 348, 354 (Bankr.E.D.Pa.1988); 5 *Collier on Bankruptcy* ¶ 1325.08[1] at 1325-42 to 1325-46 (15th ed. 1987) ("Collier"). Pursuant to § 1325(b), if a creditor who will not receive full payment under the plan objects to confirmation, the plan may only be confirmed if the debtor proposes to include all his projected disposable income in the plan for a three-year period. This Court has described § 1325(b)'s so-called "ability-to-pay" test in the following manner:

Congress responded to the courts' disparate application of the good faith standard—as a means of regulating the amount of payments and the length of Chapter 13 plans—by considering a number of proposals which would have required a good faith effort by a debtor to provide payments to creditors consistent with the debtor's ability, including a so-called "best efforts test." H.R.Doc. No. 1195, 96th Cong., 2d Sess. 24 (1980). Instead, Congress adopted the "ability-to-pay" provisions of § 1325(b), proposed by the National Bankruptcy Conference, which provided that the amount that a debtor could reasonably afford to pay would become both a floor and a ceiling for Chapter 13 plan payments. *Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st Sess. 181-203 (1981-82). It has been commented that:

Through this ability-to-pay test, Congress hoped to create a concrete standard which would both eliminate the disparity between the judicial districts and be consistent with the basic consumer credit theory of extending credit based on future income.

Silver, *The Disposable Income Test: An Attempt Toward Uniformity,* 4 Bankr. Dev.J. 221, 225 (1987) (footnotes omitted).

*Pierce,* 82 B.R. at 879 (footnotes omitted). As Judge Waldron has recently noted, "the wording of § 1325(b) evidences a specific Congressional determination that the requirement for compliance with the standards of this section can only be raised by a restricted class of claimants," namely, the trustee, or the holder of an allowed unsecured claim. *Matter of Davis,* 68 B.R. 205, 210 (Bankr.S.D.Ohio 1986). Collier also supports the view that § 1325(b)'s ability-to-pay test may be invoked only by an appropriate objection, not by the Court *sua sponte:*

The language of the provision and legislative history makes clear that, unlike the confirmation standards of section 1325(a), the ability-to-pay test may not be raised by the court *sua sponte,* nor may it be raised by the holder of only a secured claim or the holder of a claim which has not been allowed. It may be raised only by the trustee or by the holder of an allowed unsecured claim.

5 *Collier on Bankruptcy* ¶ 1325.08[2] at 1325-45 (15th ed. 1988).

▮ Although § 1325(b) may not be raised by a bankruptcy court *sua sponte,* it is appropriate for the Court to consider the standards of § 1325(b) in determining whether a debtor's proposed plan comports with § 1325(a)(3)'s good faith requirement. *Davis,* 68 B.R. at 215-16. Further support for the view that the Court's good faith inquiry should include a review of a debtor's proposed monthly budget may be found in the Sixth Circuit's recent decision in *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah),* 836 F.2d 1030 (6th Cir.1988). In *Okoreeh-Baah,* the Sixth Circuit announced a test which requires an examination of the "totality of the circumstances" in determining whether compliance with the good faith requirement of § 1325(a)(3) has been achieved. The *Okoreeh-Baah* court adopted the list of twelve factors set forth by the court in *Matter of Kull,* 12 B.R. 654 (S.D.Ga.1981), *aff'd sub nom. In re Kitchens,* 702 F.2d 885 (11th Cir.1983) as rele-

vant to a bankruptcy court's good faith inquiry. These factors are as follows:

(a) the amount of income of the debtor and the debtor's spouse from all sources;

(b) the regular and recurring living expenses for the debtor and his dependants [sic];

(c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;

(d) the probable or expected duration of the Chapter 13 plan;

(e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;

(g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;

(h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;

(i) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(j) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hard-working, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;

(k) the burden which the administration of the plan would place on the trustee; and

(*l*) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

836 F.2d 1032 n. 3 (quoting *Kull,* 12 B.R. at 659).

Two of the factors identified by the Sixth Circuit in *Okoreeh–Baah—i.e.,* "the amount of income of the debtor and the debtor's spouse from all sources"; and, "the regular and recurring living expenses for the debtor and his dependents"—suggest that a bankruptcy court's good faith inquiry should properly include a scrutiny of a Chapter 13 debtor's proposed monthly budget. Thus, both the *Davis* and *Okoreeh–Baah* decisions establish that an analysis of a debtor's budgeted monthly expenses is an appropriate element of a bankruptcy court's good faith calculus.

The statutory language of § 1325(b) provides little guidance as to the proper scope of inquiry of a bankruptcy court in its determination of whether particular budgeted expenses are reasonably necessary for the maintenance and support of the debtor or the debtor's dependents. The legislative history of § 1325(b) has been described as "singularly vague and unenlightening." *In re Jones,* 55 B.R. 462, 465 (Bankr.D.Minn.1985).[1] One commentator suggests that a bankruptcy court should refrain from imposing its value judgments upon debtors in determining whether a debtor's plan meets the requirements of 11 U.S.C. § 1325(b).

A court determining the debtor's disposable income is not expected to, and should not, mandate drastic changes in the debtor's lifestyle to fit some preconceived norm for chapter 13 debtors. The debtor's expenses should be scrutinized only for luxuries which are not enjoyed by an average American family. For example, since it is not unusual for families to send their children to parochial

---

1. The legislative history of § 1325(b) provides in relevant part as follows:

Chapter 13 relief is essentially equitable, and contemplates a substantial effort by the debtor to pay his debts. Such an effort, by definition, may require some sacrifices by the debtor, and some alteration in prepetition consumption levels. Thus, the debtor might reasonably be required to devote to the plan that portion of his income which is not neces-

sary for support of the debtor and his family. The courts may be expected to determine norms for such support, and Labor Department cost of living figures may provide some help. This approach will also permit plans to be confirmed where the debtor does make a substantial effort to pay his debts, even though the payment itself is not substantial. S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983).

schools, a court should not deem that a luxury. However, sending a child to a private boarding school is much less common, and could be deemed a luxury if no special necessity were shown. Similarly, it is not unusual for a family to have two automobiles. But there is no necessity that those automobiles both be the latest models or that they be in the luxury class.

In short, the court cannot and should not order debtors to alter their lifestyles where there is no obvious indulgence in luxuries, even where one or more unsecured creditors demand such a change. To engage in such close judgments and supervision would be to contravene the intent of Congress. It would also place impossible burdens on the court in determining the absolute necessity of every expense in each debtor's budget. Since the views of judges on such value-laden issues differ significantly, such an interpretation of the amendments would contravene their purpose of restoring nationwide uniformity to Chapter 13.

5 *Collier on Bankruptcy* ¶ 1325.08[4][b] at 1325–48 to 1325–49 (15th ed.1988) (footnotes omitted). *See also, In re Tinneberg*, 59 B.R. 634 (Bankr.E.D.N.Y.1986); *Navarro*, 83 B.R. at 355; Gross, *Preserving a Fresh Start for the Individual Debtor: The Case for Narrow Construction of the Consumer Credit Amendments*, 135 U.Pa. L.Rev. 59, 114–40 (1986).

█ The case law establishes that a bankruptcy court should not "squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan." *In re Otero*, 48 B.R. 704, 708 (Bankr.E.D.Va.1985). On the other hand, a debtor may not maintain an excessive lifestyle at the expense of his creditors. *See, e.g., In re Kitson*, 65 B.R. 615, 622 (Bankr.E.D.N.C.1986) (Chapter 13 debtor who proposes to pay unsecured claimants a 38 percent dividend "cannot expect to 'go first class' when 'coach' is available"); *In re Rogers*, 65 B.R. 1018, 1022 (Bankr.E.D.Mich.1986) (Chapter 13 debtor who proposes a plan paying a 17% divident to unsecured creditors which calls for retention of a $17,000 sports car is "pampering her own psyche at the expense of her unsecured creditors"). This Court embraces the reasoning of the foregoing tribunals and hereby adopts the sound decisional approach formulated by Judge Fox in *Navarro*, 83 B.R. at 355–56. The *Navarro* court noted that, in scrutinizing a Chapter 13 debtor's budgeted expenses, the Court should not substitute lightly its judgment for that of the debtor. Instead, it should do so only when one or more of the following factors is present:

1. the debtor proposes to use income for luxury goods or services;

2. the debtor proposes to commit a clearly excessive amount to non-luxury goods or services;

3. the debtor proposes to retain a clearly excessive amount of income for discretionary purposes;

4. the debtor proposes expenditures which would not be made but for a desire to avoid payments to unsecured creditors;

5. the debtor's proposed expenditures as a whole appear to be deliberately inflated and unreasonable.

*Navarro*, 83 B.R. at 355–56 (footnotes omitted).

█ Applying the *Navarro* criteria to the instant case, the Court finds that two of the five *Navarro* factors are present here, those having been identified in subparagraphs (2) and (5) above. It is readily apparent that the Debtors have run afoul of the second *Navarro* criteria by committing a "clearly excessive amount to non-luxury goods or services." Debtors also have violated the fifth factor enunciated in *Navarro* because their proposed expenditures as a whole "appear to be deliberately inflated and unreasonable." The budget submitted by Debtors contains several monthly expenditures which are manifestly excessive. Debtors budget $780 a month for food. In light of this Court's experience in reviewing the budgets of Chapter 13 debtors in hundreds of Chapter 13 cases each year, a $780 monthly outlay for food for a family of five is excessive by local standards. The $700 per month budgeted transportation expense likewise far exceeds

the norm for transportation costs in this geographic area. The Court is cognizant of the fact that the $700 transportation expenditure includes $465 in monthly automobile lease payments. Nonetheless, the Court finds that the additional $235 per month, which Debtors budget for transportation expenses (presumably for gasoline, oil, maintenance, etc.) is unduly high. Finally, the $250 monthly clothing expense and the $100 monthly laundry and cleaning expense are also well above the amounts necessary to provide clean, adequate clothing for Debtors and their dependents.[2]

Viewing Debtors' monthly budget as a whole, the Court is convinced that the budget is "deliberately inflated and unreasonable." *Navarro*, 83 B.R. at 356. Debtors' total monthly net income is $5,367. Of this amount, a mere $860 per month is devoted to the Plan. If the fat were trimmed from Debtors' budget, the proposed 10% dividend to unsecured creditors could be increased significantly. Under the circumstances, the Court is unable to conclude that the proposed Plan constitutes "a sincerely-intended repayment of pre-petition debt consistent with the [Debtors'] available resources." *Okoreeh–Baah* at 1033. *See also, In re Ashton*, 63 B.R. 244, 247 (Bankr.N.D.1986) (holding that Chapter 13 envisions a sincere and honest effort to repay all creditors). Accordingly, the Court concludes that Debtors' plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

Finally, the Court notes that it is incumbent upon the Debtors, as the parties seeking confirmation, to affirmatively demonstrate compliance with the confirmation criteria of 11 U.S.C. § 1325. *In re Hogue*, 78 B.R. 867, 872 (Bankr.S.D.Ohio 1987); *Pierce*, 82 B.R. at 885 n. 9. As this Court noted in *Pierce*, "if the Court deems that testimony of the debtor, or other admissible evidence, is necessary to establish cause under § 1322(c), or to satisfy any other confirmation standard under

§ 1325(a), then the debtor who fails to appear and testify, or present evidence at the confirmation hearing, does so at his peril." 82 B.R. at 885 n. 9. Here, the Debtors chose not to provide testimony or evidence, aside from an amended worksheet, in support of confirmation. Although it is unlikely that Debtors' objectionable monthly expenditures could have been justified through the presentation of testimony, absent such evidence the Court must judge the Debtors' budget on its face.

Based upon the foregoing, confirmation of Debtors' Chapter 13 plan shall be, and is hereby, DENIED. Pursuant to LBR C–3.18.18(b), the Debtors shall have twenty (20) days from the entry of this Opinion and Order to take whatever action they deem appropriate to place the Plan in a posture for confirmation. If no such action is taken, the Court shall dismiss this case.

IT IS SO ORDERED.

---

**2.** While the Debtors' $1433 monthly mortgage payment appears excessive on its face, the Court was informed by Debtors' counsel that this large monthly payment is attributable to a recent refinancing of Debtors' residence which Debtors

undertook in order to obtain funds to satisfy their tax obligations to the Internal Revenue Service. Accordingly, the Court concludes that this budget item is reasonable.