In re Ricky E. FULTON, John R. Turner, Troy R. and Rhonda L. Dalton, Thomas B. and Christina Marie Newman, Debtors.

Bankruptcy Nos. 96–15806, 97–10346, 96–15933, 97–10175.

United States Bankruptcy Court, S.D. Ohio, Western Division.

July 7, 1997.

Stephen C. Crowe, Crowe & Welch, Milford, OH, for Fultons.

Terry Risner, O'Connor, Acciani & Levy, Cincinnati, OH, for Turners and Daltons.

Christopher A. Watkins, Gray, Duning & Dunlap, Lebanon, OH, for Newmans.

Margaret A. Burks, Cincinnati, OH, Chapter 13 Trustee.

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLANS

JEFFERY P. HOPKINS, Bankruptcy Judge.

These matters are before the Court upon the requests by the debtors for confirmation of their Chapter 13 plans in the above-captioned cases and upon this Court's independent obligation to find that all requirements set forth in 11 U.S.C. § 1325(a) have been met.

The Court has jurisdiction over the matters pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district. These are core proceedings which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(2)(L). Confirmation hearings were held in each case on the dates reflected below. The following opinion and order shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 7052.

### ISSUE PRESENTED

Each case raises the issue of whether a debtor who files a petition for relief under Chapter 13 can propose and have confirmed a plan that repays a pre-petition "loan" from an ERISA-qualified retirement account at a 100% dividend while repaying unsecured creditors a smaller dividend. The Sixth Circuit has previously rejected a plan proposing this payment scheme in the case *In re Harshbarger*, 66 F.3d 775 (6th Cir.1995). However, in its review of Chapter 13 cases

**1.** The *Brumley and Alfieri* decision dealt with voluntary employee contributions to 401K pension accounts. Although *Harshbarger* decided only that employee loans from ERISA-qualified accounts cannot be paid from disposable income at 100% ahead of unsecured creditors who are to receive a smaller dividend, it would appear that the rationale and holding of that case can be extended to ones dealing with voluntary employee contributions to a debtor's pension plan. ·

**2.** For a pension plan to qualify for tax exemption under the Employee Retirement Income Security Act of 1974 (ERISA), it must contain transfer restrictions so that benefits payable under the plan may not be assigned or alienated by the participants. Pursuant to 29 U.S.C.

presented to this Court for confirmation, there have been numerous plans offered that propose to repay these so-called loans at 100% while repaying unsecured creditors a lower dividend, and rarely has an unsecured creditor or the Chapter 13 Trustee (hereinafter "the Trustee") raised an objection under 11 U.S.C. § 1325(b).

The Trustee indicated at the initial confirmation hearing for each of the cases, that she prefers to review the pension loan repayment plans on a case-by-case basis stating her reliance on an unpublished decision from this Court decided two years before *Harshbarger*. *See In re Brumley*, Case No. 92–05490 and *In re Alfieri*, Case No. 92–05337 (Bankr. S.D.Ohio 1993).[1]

With this back drop, we turn now to the present cases to determine whether the plans being proffered are confirmable under *Harshbarger*. As briefly as possible, the Court has attempted to give a synopsis of the procedural history, salient facts, and arguments of counsel deemed helpful to the analysis.

### FINDINGS OF FACT

A. *Ricky E. Fulton*, Case No. 96–15806.

Fulton filed his Chapter 13 petition and plan on November 8, 1996. The debtor's original plan proposed to pay the unsecured creditors a 70% dividend and to pay 100% towards a loan that Fulton had borrowed from his 401K retirement account prior to filing for relief under Chapter 13.[2]

§ 1108(b)(1), a loan to a ERISA account participant also must be adequately secured. The Regulations state that "adequate security" may include up to 50% of the participant's vested accrued benefit and that the security must be pledged to the account so that it may be sold, foreclosed upon, or otherwise disposed of upon default of repayment of the loan. *See* 29 C.F.R. 2550.408b–1(f) (1997). In addition, failure to repay the loan according to the terms of the pension plan will subject the participant to a 10% tax penalty for early withdrawal, plus the distribution will be treated as ordinary income to the debtor and taxed accordingly. *See* I.R.C. § 72(p), (t).

■ The original Schedule I filed by Fulton reflects a payroll deduction of $220.26 per month for "401K, Life Ins., Unt. Way." On January 28, 1997, Fulton filed amended Schedules I and J (Doc. 14) clarifying that $201.89 was the amount paid into the 401K account. In a memorandum in support of the debtor's plan (Doc. 21), Fulton's attorney affirmed that the full $201.89 was a loan repayment to an ERISA-qualified pension plan.[3]

This matter came on for hearing on confirmation January 28, 1997. At the hearing, the debtor's attorney informed the Court that Fulton would be filing an amended plan. On February 18, 1997, the debtor filed an amended plan (Doc. 19) providing for a 79% dividend to unsecured creditors. Also, according to the amended plan, during the first 21 months, the debtor's 401K loan would be repaid at $201.89 per month—a 100% dividend. As proposed by the debtor, the plan payments would be $775 per month during the first 24 months, and later would increase to $1,075 [4] for the remaining 30 months.

Interestingly, however, after his 401K loan is repaid in full, Fulton's amended plan does not propose to redirect the extra $201.89 that would be gained from the retiring of that note towards payments to the Trustee's Office which would, in effect, increase the dividend received by unsecured creditors to 100%.[5]

At the confirmation hearing, the Court stated that it was unpersuaded that the Fulton case met the standards under *Harshbarger.* The Court then invited Fulton's attorney to discuss whether the amended plan was in compliance with *In re Harshbarger.*[6] Fulton's attorney was also given an additional 30 days, or until February 27, 1997, to provide the Court with a memorandum of law supporting his arguments. The Court stated that the amended plan may have to be further modified to comply with *Harshbarger.* Subsequently, confirmation in the Fulton case was denied and the matter was reset for hearing on March 27, 1997.

On February 27, 1997, Fulton's lawyer filed a memorandum in support of his client's plan (Doc. 21). In the memorandum, Fulton's attorney contends that his client's 401K loan is a fully secured claim by virtue of a right of setoff held by the pension plan administrator; that equity will be served under the debtor's amended plan (Doc. 19) because it extends for 54 months (paying a 79% dividend to the unsecured creditors) as opposed to only 36 months (paying a 37 % dividend to the unsecured creditors); that the plan pays more to the unsecured creditors than they would receive in a liquidation; that Fulton will suffer a tax hardship which would be deleterious to the debtor's "fresh start"; and, that the assessment of federal tax because of non-payment of the 401K loan will ultimately reduce the total dividend received by the

---

3. Only Mr. Fulton clearly refers to his retirement account as ERISA-qualified. However, upon examination of the schedules in each of the cases and the restrictions placed on each loan, it appears that all of the retirement accounts fit into this category. The Daltons and Newmans both employ the term "401K" when referring to their loans, and Ms. Turner refers to "Thrift Savings/ret" when describing her loan. The Court, therefore, concludes for purposes of deciding these cases that the retirement accounts for Ms. Turner, the Daltons and Newmans are ERISA-qualified. As such each of the pension plans shall be treated as tax exempt under the Internal Revenue Code. The funds in those accounts at the time the petitions were filed, likewise, will be deemed excludable from the bankruptcy estate under § 541(c)(2). *See Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *also see Harshbarger,* 66 F.3d at 777.

4. Mr. Fulton's amended plan indicates that the increase in monthly payments after 24 months will occur as a result of Mr. Fulton completing

payments on a secured loan to First State Bank for purchase of an automobile.

5. The February 18, 1997, plan provides for payment to unsecured creditors of $22,471.87 or 79% of the total unsecured debt of $28,445.40. If the $201.89 is added to the plan for the last 33 months, this will yield an additional $6,662.37 for unsecured creditors. Payment of this additional amount is more than sufficient to provide the unsecured creditors with the remaining 21% of their debt ($5,973.53) and to pay the Trustee's fees of approximately 6% ($358.41) of the additional amounts disbursed or a total of $6,331.94.

6. With respect to *In re Fulton* and *In re Turner,* below, the Trustee and the parties questioned whether the Court could or should address the *Harshbarger* issue *sua sponte.* That issue is discussed below.

unsecured creditors from this estate. Based on these contentions, the attorney asserts that Fulton's amended plan filed February 18, 1997, should be confirmed.

B. *Joan R. Turner,* Case No. 96–15933.

Ms. Turner filed her Chapter 13 petition and plan on November 14, 1996. Later the debtor filed an amended plan (Doc. 7) which proposed to pay the unsecured creditors a 70% dividend. The first confirmation hearing was held January 28, 1997.

The original Schedule I filed by Ms. Turner reflects a payroll deduction of $59.08 per month for "Thrift Savings/ret." Prior to the confirmation hearing, Turner's attorney advised the Court that this amount was a loan repayment to the debtor's ERISA-qualified retirement account. At the hearing, debtor's counsel affirmed that the entire $59.08 was a retirement loan repayment and that the debtor's first amended plan proposed to pay 100% of that loan. Thereafter, the debtor filed a second amended plan on January 28, 1997 (Doc. 9), leaving unchanged any of the provisions related to the repayment of the retirement loan.

Similar to the treatment of Fulton's case, at the January 28, 1997, confirmation hearing the Court requested Turner's attorney to explain whether the plan, as proposed, complied with *In re Harshbarger.* Turner's lawyer was also given 30 days, or until February 27, 1997, to provide the Court with a memorandum of law in support of her position. The Court entered an Order on February 5, 1997 (Doc. 14), denying confirmation and resetting the confirmation hearing for March 27, 1997.

On February 27, 1997, Turner filed a memorandum in support of her plan (Doc. 16) making many of the same arguments presented by Mr. Fulton. She contends in her brief that equity considerations will be served under her plan because it extends for 48 months (paying a 70% dividend to the unsecured creditors) as opposed to only 36 months (paying approximately a 20% dividend to the unsecured creditors); that the

debtor will be burdened with additional federal taxes if not permitted to repay her retirement loan in full under the terms of her loan agreement and that this in turn will reduce the dividend to unsecured creditors; and, that the Court should use its equitable powers under 11 U.S.C. § 105(a) to resolve these issues in favor of the debtor and approve the second amended plan as proposed by the debtor.

C. *Troy R. Dalton and Rhonda L. Dalton,* Case No. 97–10175.

Mr. and Mrs. Dalton filed their Chapter 13 petition and plan on January 13, 1997. The Daltons propose to make plan payments of $328 per month for 54 months. The original Schedule I filed by the Daltons reflects a payroll deduction of $17.74 per week for "401K loan" from Mr. Dalton's pay. Simple arithmetic reflects a repayment of approximately $76.87 per month on the retirement loan.[7] Mr. Dalton is also contributing voluntary payments of approximately $108 per month toward his 401K plan. The Daltons' plan proposes to pay a 70% dividend to the unsecured creditors and to repay 100% of Mr. Dalton's retirement loan.

On March 6, 1997, the Chapter 13 Trustee filed an Objection to the Daltons' plan (Doc. 5). The Trustee contends in her objection that the plan is unacceptable because the Daltons' failed to serve upon the Trustee, as she had requested, a memorandum "stating in detail why this repayment does not violate the 6th Circuit case of *In re Harshbarger.*" The memorandum requested by the Trustee was to detail the "amount of the loan, the repayment schedule, tax consequences, and a legal and financial analysis of why the repayment does not violate *Harshbarger.*"

By letter dated March 26, 1997, addressed to the Court and the Trustee, the debtors' attorney provided his *Harshbarger* analysis. The Court assumes that counsel's letter constitutes the debtor's response to the Trustee's objection despite the fact that this document is not in a proper pleading form under

---

7. The Court arrives at this figure using the following mathematical calculation: $17.74 × 52 weeks = $922.48 / 12 months = $76.87.

the bankruptcy rules or rules of this Court. In the letter, the Daltons contend that their plan does not violate *Harshbarger*. They also argue that their plan deserves favorable consideration under principles of equity because payments to unsecured creditors would extend for 54 months. The Daltons join the other debtors in these cases urging that this Court use its equitable powers to confirm their plan on the theory that unsecured creditors receive an additional benefit because of the duration of the plan which extends for more than 36 months.

### D. *Thomas B. Newman and Christina Marie Newman*, Case No. 97–10346.

Mr. and Mrs. Newman filed their Chapter 13 petition and plan on January 22, 1997. The Newmans propose to make plan payments of $526 per month for 58 months. The original Schedule I filed by the Newmans reflects a payroll deduction from Mrs. Newman's pay of $120.00 per month for "wife 401K."

After inquiry at the 341 Meeting of Creditors, the Trustee determined that the payroll deduction includes a payment of $10.00 per week, calculated at $43.33 per month, towards the loan from the debtor's 401K account.[8] In addition, Mrs. Newman is making a voluntary contribution of approximately $80.00 per month into her 401K retirement account. The Newmans' plan proposes to pay a 71% dividend to the unsecured creditors and to repay 100% on Mrs. Newman's loan from her retirement account.

On March 6, 1997, the Chapter 13 Trustee filed an Objection to the Newmans' plan (Doc. 7) on the same basis as that stated in the Objection to the Daltons' plan—that the debtors had failed to serve her with a memorandum "stating in detail why this repayment does not violate the 6th Circuit case of *In re Harshbarger*." Similarly, the Trustee requested that the debtors detail the "amount of the loan, the repayment schedule, tax consequences, and a legal and financial analysis of why the repayment does not violate *Harshbarger*."

8. $10 × 52 weeks = $520 / 12 months = $43.33.

9. On April 16, 1997, Mr. Fulton filed a third amended plan (Doc. 23). The third amended

On March 13, 1997, the Newmans filed their Response to Trustee's Objection (Doc. 10) and provided the requested analysis in an attempt to demonstrate that their plan was in accord with *Harshbarger*. In their Response, the debtors merely argue that *Harshbarger* is distinguishable on the bases that the balance on the Newmans' retirement loan is less than the amount owed in *Harshbarger*; that the Newmans' monthly retirement loan repayments are less than the amount paid in *Harshbarger*; that the Newmans' proposed dividend to unsecured creditors is 71 % as opposed to 40% as in *Harshbarger*; that the Newmans' will incur a substantial tax hardship if not permitted to repay the 401K loan in full; and that these taxes will reduce the dividend to unsecured creditors. The Newmans likewise advocate acceptance of their plan, as proposed.

### E. *The Final Confirmation Hearing.*

The confirmation hearings for each of the cases discussed were combined and held on March 27, 1997. Upon being served with the requested memoranda, and apparently being satisfied that *Harshbarger* had been adequately distinguished or that the debtors would suffer a sufficient hardship that might impair their fresh start under the bankruptcy laws, the Trustee withdrew her opposition in the two cases in which objections had been filed. Consequently, the Trustee recommended all four cases for confirmation.

Upon due consideration of all the memoranda, of arguments of counsel and the Trustee, and after independent research, the Court determined that confirmation in each of the cases should be denied because the plans failed to meet the requirements of *In re Harshbarger*. Subsequently, the debtors were advised that their cases would be dismissed unless each of the plans was modified within 20 days of the confirmation hearing to conform to the *Harshbarger* decision.

Subsequent to the March 27, 1997, confirmation hearing, Mr. Fulton,[9] Mr. and Mrs.

plan increases the monthly payments to $775 for the first 24 months and $1,275 for the next 30

Dalton [10] and Mr. and Mrs. Newman [11] all proposed modifications to their plans which brought them into compliance with *Harshbarger*. Ms. Jones did not file a modification or amendment to her plan.

In anticipation of an appeal of the Court's decision, the attorney for Fulton requested at the final confirmation hearing that the Court specifically address in its written opinion, his argument that Fulton's case was distinguishable from *Harshbarger* since Fulton's plan ran for 54 months as opposed to 36 months. None of the parties filed a supplemental brief despite the Court's invitation for them to do so in support of their views.

### CONCLUSIONS OF LAW

In *Harshbarger*, the Chapter 13 trustee filed an objection to confirmation asserting that it would be improper for the debtors to use disposable income to repay a loan from the debtors' ERISA-qualified retirement account. The trustee argued that payroll deductions sought to be used for that purpose were includable in the debtors' disposable income calculation under 11 U.S.C. § 1325(b). The Sixth Circuit agreed, and determined that "it would be unfair to the creditors to allow the debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100 % dividend." *In re Harshbarger*, 66 F.3d 775, 778 (6th Cir.1995)(quoting *In re Jones*, 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991)). Accordingly, the Court of Appeals concluded that "the District Court was correct in upholding the decision to reject debtors' plan based on § 1325(b)...." *Harshbarger*, 66 F.3d at 778.

In the current cases under review, we are called upon to determine whether matters not addressed by the Sixth Circuit in *Harshbarger* dictate that we reach a different re-

sult. *Harshbarger* constitutes binding precedent on this Court. As such, this Court is required to follow *Harshbarger* unless it can be distinguished from the cases at bar.

In attempting to distinguish *Harshbarger*, the debtors have constructed several arguments for this Court to consider:

A. With respect to each of the cases, does a bankruptcy court have the authority to raise, *sua sponte*, the issue of whether the plans should be rejected under *Harshbarger*, when the objection by the Trustee has been withdrawn and no other objection by a creditor has been presented.

B. Whether the Court should approve the proposed plans based on the risk to the debtors of becoming subject to federal taxation and early withdrawal penalties and based on the debtors' contention that the occurrence of such tax hardships will reduce the dividend payable to the unsecured creditors.

C. Whether a bankruptcy court should approve any of the plans under the court's equitable authority pursuant to 11 U.S.C. § 105(a) since the proposed plans extend for periods in excess of 36 months and since the plans purportedly will pay more to the unsecured creditors than they would receive in a Chapter 7 liquidation.

D. Whether the Court should confirm any of the proposed plans on the basis that the retirement loans may be separately classified as secured loans by virtue of a right of setoff, thus enabling the debtors to repay the retirement loans at 100% while repaying unsecured creditors a smaller dividend.

### Sua Sponte Review by Court

The Court will first address the challenge raised by the Chapter 13 Trustee and certain of the debtors to its authority to consider, *sua sponte*, the standards of 11 U.S.C.

---

months. Thus, Fulton's plan proposes to pay a 100% dividend to unsecured creditors.

10. On April 11, 1997, the Daltons filed their first amended plan (Doc. 9). The amended plan increases the monthly plan payment to $414 per month for a period of 57 months. It likewise proposes to pay a 100% dividend to unsecured creditors.

11. On April 2, 1997, the Newmans filed a motion to modify their plan (Doc. 12). The modification provides that the automatic payroll deduction to repay Mrs. Newman's 401K loan will be stopped. The additional $40 of monthly disposable income will be added to the plan thereby increasing the monthly plan payments to $590. The modified plan (Doc. 13) was filed April 22, 1997.

§ 1325(b)(1). In particular, these parties argue that the *Harshbarger* doctrine may not be raised, *sua sponte*, by the Court, unless an objection to confirmation has been filed by one or more of a limited class of persons designated under § 1325(b), namely—an unsecured creditor holding an allowed claim or the Trustee.

Before a bankruptcy court can confirm any Chapter 13 plan, the requirements of 11 U.S.C. § 1325(a) must be met. These requirements include finding that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title" and that "the plan has been proposed in good faith and not by any means forbidden by law." *See* 11 U.S.C. § 1325(a)(1), (3).

 Since the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, it has become clear that § 1325(b) may not be raised by a bankruptcy court, *sua sponte*. If "there is no pending objection by the Chapter 13 Trustee or the holder of an allowed unsecured claim, the court cannot, *sua sponte*, deny confirmation under § 1325(b) to the debtors' amended plan." *Matter of Davis*, 68 B.R. 205, 210 (Bankr.S.D.Ohio 1986). However, it is equally clear and also appropriate for the Court to *consider* the principles of § 1325(b) in determining whether a debtor's proposed plan conforms to the good faith requirements of § 1325(a)(3). *Davis*, 68 B.R. at 215–16; *In re Stein*, 91 B.R. 796, 800 (Bankr.S.D.Ohio 1988). Even when there are no pending objections to confirmation, a bankruptcy court, "nevertheless, has an independent duty to ensure that the Plan meets the requirements for confirmation as set forth in 11 U.S.C. § 1325(a), including the good faith standard of § 1325(a)(3)." *In re Stein*, 91 B.R. at 799; *In re Bowles*, 48 B.R. 502, 505 (Bankr.E.D.Va.1985).

 An analysis of a debtor's budgeted monthly expenses is an appropriate element of a bankruptcy court's good faith calculus. *See In re Stein*, 91 B.R. at 801; *Matter of Davis*, 68 B.R. 205; *also see In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988). "[W]hile the debtors' income and expenditures, in the absence of an objection by the Chapter 13

Trustee or the holder of an allowed unsecured claim, could not be a basis to deny confirmation, it can be considered, *sua sponte*, as a factor in determining good faith and in this case is a factor that, under § 1325(a)(3), weighs against confirmation of this proposed plan." *Matter of Davis*, 68 B.R. at 216.

Turning now to the provisions of § 1325(b), which the Court must consider in making its determination of good faith under § 1325(a)(3), the statute provides in relevant portion:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then *the court may not approve the plan unless*, as of the effective date of the plan—
>
> . . .
>
> (B) the plan provides that *all of the debtor's projected disposable income to be received in the three-year period* beginning on the date that the first payment is due under the plan *will be applied to make payments under the plan.*
>
> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the *maintenance or support of the debtor or a dependent of the debtor* . . . (emphasis added). 11 U.S.C. § 1325(b).

 If this Court's sole consideration was the value being paid by the debtors on expenditures which could arguably be considered "reasonably necessary to be expended for the maintenance and support of the debtor or a dependent of the debtor" within the meaning of § 1325(b)(2), then quite clearly, the Court would be prohibited from, in essence, circumventing the strict command of § 1325(b)(1)—that only the Trustee and holders of allowed unsecured claims are permitted to object to confirmation because of a debtor's failure to comply with the commonly understood "ability to pay test." The inquiry, here, considers much weightier principles than those. The matters under consideration in these cases require an analysis of the bankruptcy code as well as the doctrine of *stare decisis*.

■ "Time and time again, this Court has recognized that the 'doctrine of stare decisis is of fundamental importance to the rule of law.' ... [Citations omitted.] Adherence to precedent promotes stability, predictability, and respect for judicial authority." *Hilton v. South Carolina Public Rys. Comm'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 563–64, 116 L.Ed.2d 560 (1991) (quoting *Welch v. Dept. of Highways & Public Transp.,* 483 U.S. 468, 495, 107 S.Ct. 2941, 2957–58, 97 L.Ed.2d 389 (1987)). Moreover, the touchstone of a pyramidal system of courts is furthered when trial courts decide cases before them in a manner consistent with the rulings of higher courts. The very idea of law connotes the same treatment for similarly situated persons for indistinguishable factual situations. The very foundation of the doctrine of binding precedent is for lower courts to apply the law decided by a higher court. *See generally* John M. Rogers, *Lower Court Application of the "Overruling Law" of Higher Courts,* LEGAL THEORY, 1 (1995), 179–204.

In the present cases, we have an unmodified decision from our Court of Appeals which forms a precedent for guiding the decisions of all lower federal courts within this circuit. Given the clarity of the Sixth Circuit's holding in *Harshbarger,* the Trustee and debtors bear a heavy burden of persuading this Court that the appellate court intended for there to be variations to the rule.

In *Harshbarger,* the Sixth Circuit determined, as a matter of law, that a Chapter 13 debtor is prohibited from allocating income "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" towards repayment of a pension loan while unsecured creditors are being repaid anything less than 100%, regardless of the amount of the dividend. In rejecting the use of disposable income by Chapter 13 debtors for this purpose, the Court of Appeals stated:

Debtors' Plan proposes to deduct $61.17 per month from the disposable income available to pay unsecured creditors so that Mrs. Harshbarger may restore her full interest in the ERISA account. This expenditure may represent prudent financial planning, but it is not necessary for the "maintenance or support" of the debtors. [Citation omitted] Accordingly, the District Court was correct in affirming the decision to reject the Plan. *Harshbarger,* 66 F.3d at 777.

Concerned with the debtors' ability to rehabilitate themselves and gain a fresh start upon emerging from bankruptcy, the Chapter 13 Trustee attempts to distinguish *Harshbarger* based on the consideration of a number of factors: How large is the dividend being paid to unsecured creditors through the plan, the length of the plan and whether the plan exceeds 36 months, and the tax hardship the debtor may be subjected to by virtue of an early monetary withdrawal from the pension plan. However, this Court does not believe *Harshbarger* can be distinguished along those lines.

Instead of giving bankruptcy courts latitude to examine the equities of each of the constituents in these pension loan repayment cases, the Court of Appeals narrowly construes the bankruptcy laws on this point. The *Harshbarger* opinion does not invite lower courts to employ balancing tests or to weigh factors or to consider other evidence identified by debtors that may impact adversely upon concepts of fresh start before deciding whether to confirm the plans in these cases. Under the Sixth Circuit's narrow reading of the statutes, a consideration of the factors articulated by the Trustee would not alter the result obtainable under the bankruptcy laws. It would still be unfair to allow Chapter 13 debtors to treat themselves as creditors by replenishing funds borrowed from a pension plan at the rate of 100% while paying unsecured creditors a smaller dividend. *See Harshbarger,* 66 F.3d at 778.

■ Having determined that a bankruptcy court has the independent authority to consider the standards under § 1325(b) in analyzing whether a debtor's proposed plan comports with § 1325(a)(3)'s good faith requirement, we believe also that the Court is under an *affirmative duty* to ensure that the plans comply with the *Harshbarger* doctrine. In these circumstances the rule of *stare decisis* is applicable. "[T]his doctrine means ...'that when a point has been once settled

by judicial decision, it forms a precedent for the guidance of courts in similar cases,' precedents which cannot be distinguished should be followed until modified or overruled, and the interest of uniformity, certainty and stability in the law thus promoted. Certainty of a rule is often of equal importance with theoretical accuracy." *Cold Metal Process Co., v. E.W. Bliss Co.,* 285 F.2d 231, 236 (6th Cir. 1960), *cert. denied,* 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235 (1961) (citing *New York Life Ins. Co. v. Ross,* 30 F.2d 80, 83 (6th Cir.1928), *cert. denied,* 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995 (1929)); *see also Penfield v. C. & A. Potts & Co.,* 126 F. 475, 478 (6th Cir.1903)(involved the validity of a patent).

■ In each of the Chapter 13 plans presently before the Court, the debtors are proposing to pay a smaller dividend to unsecured creditors while concurrently repaying funds borrowed from their pension accounts at 100%. As such, each plan violates principles espoused in *Harshbarger.* This Court is unable to distinguish *Harshbarger* from any of the cases at bar: Neither has that decision been overruled or modified. Since none of the plans can be reconciled with the *Harshbarger* precedent and this Court is required to follow it, we are unable to find that any meet the requirement of § 1325(a)(3)—that a plan be proposed in good faith and not in any manner forbidden by law.

The Court further notes that 11 U.S.C. § 1322(a)(1) requires that the plan shall "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." In *In re Jones,* on facts similar to each of the cases at bar, Judge Calhoun found that "[t]he Debtors' earnings constitute part of the estate while the Plan is in effect. Thus, this Court may require all of the Debtors' earnings to be included in the Plan where the dividend is less than 100%." *In re Jones,* 138 B.R. 536, 538 (Bankr. S.D.Ohio 1991). *See also Harshbarger,* 66 F.3d at 777 (money debtors wish to use to repay their ERISA loans is property of the estate and debtors must treat it as disposable income).

■ The plans before this Court fail to provide for submission of a satisfactory portion of the debtors' disposable income towards repayment of unsecured creditors to satisfy *Harshbarger* and § 1322(a)(1). The debtors are attempting to deduct from future income an amount in order to repay their retirement loans at 100%, which under both the statute and *Harshbarger,* falls under the supervision and control of the Trustee for execution of the plan. For that reason, this arrangement is unacceptable. *See, e.g., In the Matter of Carpenter,* 23 B.R. 318 (Bankr. D.N.J.1982) (chapter 13 trustee has total supervision and control over debtor's future earnings; when compliance with any state or city law, including law requiring deductions to repay a loan to municipal retirement system, conflicts with and frustrates trustee's power over this part of chapter 13 estate, state or city law must yield to the bankruptcy laws).

The Court finds the plans presented here are repugnant to the holding in Harshbarger and are not in compliance with 11 U.S.C. § 1322(a)(1). Accordingly, we conclude that the plans, as proposed by each of the debtors in these cases, may not be confirmed under either the good faith standard of 11 U.S.C. § 1325(a)(3) or the provisions of 11 U.S.C. § 1322(a)(1).

Were this Court to reach a different result, it would be contributing to an erosion of the doctrine of *stare decisis* and ignoring the commands of 11 U.S.C. § 1322(a)(1). If nothing more, the result achieved today will uphold a cornerstone of our system of jurisprudence that similarly situated persons, Chapter 13 debtors in this case, can expect and will receive similar treatment under our bankruptcy laws.

Ordinarily, the Court's analysis would end here since a discussion of the other issues raised by the parties might constitute surplusage. However, the analysis of points argued by the debtors in these cases offer an alternate basis for denying confirmation. Further, the Court believes its discussion of those arguments will be of benefit to future litigants seeking confirmation of Chapter 13 plans that offer similar payment priorities for debtors with pension loans.

### Tax Consequences

■ The debtors in these cases assert that the Court should consider the tax hardship they will suffer if not permitted to repay their retirement loans at 100%. The debtors here argue that their cases can be distinguished from *Harshbarger* on the basis that the Sixth Circuit did not consider these potential adverse tax consequences in *Harshbarger*, and that had the court done so it would have created an exception for tax hardship cases. We disagree.

As earlier stated, the Sixth Circuit cited with approval Judge Calhoun's decision, *In re Jones*, 138 B.R. 536. A close reading of *Jones* reveals that Judge Calhoun carefully undertook to consider the tax consequences to debtors in these type cases. It is extremely unlikely that the Sixth Circuit would agree with Judge Calhoun's rationale and adopt his fairness analysis without also agreeing with the *Jones* court's analysis of the tax implications for debtors. Yet, the Sixth Circuit did not criticize *Jones* on that or any other basis. *Also see In re Scott*, 142 B.R. 126, 135 (Bankr.E.D.Va.1992) ("Court finds that the debtor may not avoid such [tax] liability and hardship to the detriment of his creditors."), *cited with approval in Harshbarger*, 66 F.3d at 777.

Moreover, the Sixth Circuit was no less dissuaded from reaching the result that it did in *Harshbarger* when presented with a similar "hardship" consideration by the debtor in that case. There, the debtor argued that she would suffer a significant diminution in the value of her retirement account from an offset by the pension plan administrator, to which the Court of Appeals responded: "It is unfortunate that Mrs. Harshbarger's expected pension benefits may be diminished by a future setoff against the unpaid portion of her obligation to the ERISA-qualified account. However, this consideration does not alter the result under the bankruptcy laws." *Harshbarger*, 66 F.3d at 778.

■ Accordingly, "[t]he fact that the Debtors may incur certain tax liability ... does not alter the Court's position that the [payroll] deductions for the repayment of the loans [to a pension account] are to be included in the Debtors' disposable income." *In re*

*Delnero*, 191 B.R. 539, 544 (Bankr.N.D.N.Y. 1996).

Attempting the same argument from a different perspective, the debtors assert that the unsecured creditors will be adversely affected by receiving a lower dividend because of the tax consequences that may befall the debtors. For example, Fulton's attorney asserts that if his client is not permitted to repay the balance of $4,523.14 to Fulton's retirement account, then he will incur a 10% early withdrawal penalty assessed by the IRS in the amount of $452.31 and a possible additional income tax in the amount of $1,266.48. Fulton's attorney further asserts that these events will culminate in a federal tax priority claim arising in favor of the IRS in the amount of $1,718.79. In turn, the debtor contends that this will further reduce the dividend to unsecured creditors of the estate.

Mr. Fulton's argument fails, however, because his plan already proposes to repay the larger retirement loan amount of $4,523.14 ahead of the unsecured creditors. It appears that the unsecured creditors would be better off if the amount of priority debt is only the $1,718.79 in taxes as opposed to the debtor having to repay $4,523.14 towards the retirement loan. The benefit to the unsecured creditors appears to be approximately $2,804.35.

In other words, the tax ramifications in each of the cases before the Court are equal to only a percentage of the unpaid retirement loan and are not equal to the total amount the debtors are seeking authorization to repay to their pension plans. Therefore, contrary to the debtors' assertions, the unsecured creditors, it would appear, are at much greater advantage than they would be if the pension loans were paid at 100%, even though some additional unsecured priority tax debt may accrue and become payable ahead of those creditors.

### Length of Plan

The debtors also assert that their respective plans should be confirmed because each

extends payments beyond 36 months.[12] Indeed, this factor coupled with the fact that the plans propose to pay a dividend of 70% to 79%, apparently convinced the Trustee that the cases were distinguishable from *Harshbarger*, and that they should be confirmed. Ignoring, for the moment, that *Harshbarger* requires that unsecured creditors receive a 100% dividend before a pension loan may be paid, the debtors maintain that the creditors will obtain a benefit by receiving a 70% to 79% dividend that they would not otherwise receive since the debtors will be making payments beyond the 36th month. By sacrificing their "freedom" from having to make these additional payments, the debtors contend that a bankruptcy court should adopt a more flexible approach to confirmation in Chapter 13 cases which propose to repay a retirement loan in this manner.

The Court is mindful of the considerable precedent that exists in this district and others which holds that a debtor cannot be forced to extend his plan for a period longer than three years. *See In re Porter*, 102 B.R. 773 (9th Cir.BAP 1989) (where debtor's plan has been proposed in good faith and is in compliance with 11 U.S.C. § 1325, debtor cannot be forced to extend the plan beyond 36 months); *In re Pierce*, 82 B.R. 874 (Bankr.S.D.Ohio 1987) (assuming compliance with the confirmation criteria contained in § 1325, debtors should not be required to extend their plan beyond 36 months); 8 COLLIER ON BANKRUPTCY, ¶ 1322.17 at 1322–52 (15th ed. rev.1997) ("A court considering confirmation of such a plan must ensure that the extension beyond three years is completely voluntary, and not imposed on the debtor by creditors or the chapter 13 trustee.")

However, to address the debtors' contentions that a plan which extends for greater than 36 months and pays a 70% or better dividend to unsecured creditors should be confirmed, we again must turn to the good faith test found in § 1325(a).

The proposition that each plan purports to extend payments in excess of 36 months bears legal significance under the good faith

calculus of § 1325(a)(3). The Sixth Circuit in *In re Okoreeh–Baah*, found that a bankruptcy court's good faith inquiry should include a review of the totality of the circumstances, and the circuit court adopted the list of twelve factors articulated in *Matter of Kull*, 12 B.R. 654 (S.D.Ga.1981), *aff'd sub nom. In re Kitchens* 702 F.2d 885 (11th Cir.1983), as relevant to a bankruptcy court's good faith inquiry. *See also In re Caldwell*, 895 F.2d 1123 (6th Cir.1990); *In re Stein*, 91 B.R. 796. Three of the factors identified in *Okoreeh–Baah* provide guidance here: "[T]he probable or expected duration of the plan; ... the extent of preferential treatment between classes of creditors;" and "the motivation and sincerity of the debtor in seeking Chapter 13 relief." *In re Caldwell*, 895 F.2d at 1126 (6th Cir.1990) (citing *In re Okoreeh–Baah*, 836 F.2d 1030).

We find that the plans in each of the cases under consideration are of admirable length because all extend payments beyond the minimum allowable period of 36 months. Alone, this factor weighs favorably for the debtors since "length of repayment is a relevant indicator of the debtor's good faith." *In re Caldwell*, 895 F.2d 1123, 1126.

However, this Court is further convinced that the debtors' efforts to place themselves in a separate class of creditors, and to offer themselves preferential treatment by allowing their pension plans to be repaid ahead at 100% while unsecured creditors receive a smaller dividend, may not rise to the level of bad faith as that found in *Caldwell*, but does demonstrate on the part of these debtors a lack of good faith, especially when one considers the fact that each of the plan proponents have completely disregarded the rule established by *Harshbarger*. Since the debtors have the burden of persuasion on meeting the good faith standard, and we find it lacking here, then the debtors have failed to carry their burden of proof. This is a factor under § 1325(a)(3) that weighs heavily against confirmation of the proposed plans.

---

**12.** Section 1322(d)(1) provides that "[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for *cause*, approves a longer period, but the court may not approve a period that is longer than five years." (Emphasis added).

Proponents of the flexible approach to confirmation in these cases also contend that creditors will receive a greater payout over the life of the longer proposed plans when compared to a plan that extends for a shorter period of only 36 months.

Again, at first glance, the debtors' argument seems appealing. However, upon further analysis and particularly in view of the provisions of 11 U.S.C. § 1307,[13] the Court is troubled by the fact that each of these debtors is free at any time to convert to a Chapter 714 or to dismiss the case altogether before ever making the additional payments to unsecured creditors beyond the 36th month.

Under the debtors' proposed plans, they may freely repay themselves—the debtors' pension funds—at a rate of 100% until the loans are satisfied, while placing disposable income consisting of their future earnings beyond the reach of creditors. *See* § 541(c)(2); *also see Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (under § 541(c)(2) a debtor's interest in an ERISA-qualified pension plan is excludable from the bankruptcy estate.)

After the borrowed funds are restored to the pension fund, there is nothing to prevent the debtors from seeking an early exit from the Chapter 13 proceedings. Debtors in these cases would be placed in an unfairly advantageous position while creditors would be deprived of access to perhaps the estate's most valuable asset—the debtor's potential earnings—which consists of disposable income not being used for and support of the debtor or the debtor's dependent. This is a result which contravenes fairness principles repeated throughout the bankruptcy laws and is one which Congress clearly did not intend. *See* 11 U.S.C. §§ 1306, 1322(a)(1), 1325(b) and 1327(b).

The Court views the unenforceable promise to pay unsecured creditors for a period beyond 36 months in these cases as anything but a benefit to the creditors in light of the provisions of § 1307. In the final analysis, debtors who want first to be able to repay themselves with disposable income that, under *Harshbarger* and § 1322(a)(1), must be used to repay unsecured creditors is another factor that suggests to this Court that these debtors are not sincere in seeking Chapter 13 relief.

The debtors also assert that their respective plans should be confirmed because the unsecured creditors will receive more under the proposed plans than they would receive in a liquidation. This argument is specious at best. The Bankruptcy Code specifically requires that a Chapter 13 plan pay the unsecured creditors at least as much as they would receive in a Chapter 7 liquidation—the so-called best interest test. *See* 11 U.S.C. § 1325(a)(4). Debtors' argument, therefore, carries no weight since that is a separate requirement of the Bankruptcy Code and has nothing to do with an analysis of whether the *Harshbarger* requirements are met.

Further, as Judge Small found in *In re Festner,* 54 B.R. 532, 534 (Bankr.E.D.N.C. 1985), the fact that unsecured creditors will receive more under debtors' proposed Chapter 13 plans than if debtors liquidated under Chapter 7 may be true; however, it is questionable whether a "Chapter 7[14] filing by the debtor with disposable income of approximately $540 would constitute a substantial abuse under 11 U.S.C. § 707(b)." As in *Festner,* each of the debtors in the present cases before the Court have sufficient dispos-

---

**13.** Section 1307 provides:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

**14.** Obviously, if the debtor converts as is his right under 11 U.S.C. § 1307(a), the debtor must be eligible to file a Chapter 7 which would include an analysis under § 707(b) as to whether a significant amount of disposable income indicates an abuse of the system. *See In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Festner,* 54 B.R. 532 (Bankr.E.D.N.C.1985).

able income [15] so that it might well be questionable whether any of them could survive scrutiny under a substantial abuse examination pursuant to § 707(b).[16] *See In re Krohn*, 886 F.2d at 126 (whether the debtor is able to pay his debts out of future earnings and whether debtor is eligible for adjustment of his debts through Chapter 13 are factors to consider when examining a case for substantial abuse under § 707(b)).

Thus, even under the totality of circumstances test, this Court finds that the debtors have failed to demonstrate that their plans are proposed in good faith because of the preferential classification of the pension loans, the absence of adherence to *Harshbarger* and the questionable motivation of the debtors in attempting to repay themselves more than their unsecured creditors would receive using the bankruptcy laws.

### Section 11 U.S.C. § 105(a)

■ With respect to any arguments that the Court should use its equitable powers under 11 U.S.C. § 105(a) to confirm the plans, we note that there are limits on such power. "Bankruptcy courts are not free, however, to employ section 105 as a general license to do equity as they perceive it, especially where it appears that the equity to be done would conflict with other bankruptcy law." *In re Barbera*, 1996 WL 446821 (Bankr.E.D.Mich.1996) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)). Further, in this situation, it is not clear that the equities flow in favor of the debtors. As Judge Calhoun observes in his well-reasoned analysis in, *In re Jones:*

First, to allow the Debtors to withdraw and use their benefits in advance of retirement and then claim this as a protected fund would be unfair to their creditors. Second, such a holding would provide an inappropriate message to future debtors. The holding would suggest that debtors contemplating bankruptcy could take out loans against their retirement fund and then insulate those sums from the Chapter 13 trustee. The result would be that sums expended from future earnings on the repayment of these loans would be beyond the creditors' reach. It is clear that Congress never intended this result. Section 1322 of the Bankruptcy Code provides that a debtor's estate is subject to the total supervision and control of the Chapter 13 trustee and includes all of the debtor's earnings while the plan is in effect. . . .

A guiding principle of bankruptcy is "good faith" and "fairness" in the treatment of creditors. As already mentioned, it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

In summary, to hold otherwise would permit the Debtors to insulate a portion of their future earnings from their estate which is unfair to the creditors and contrary to 11 U.S.C. § 1322. Secondly, it would set an untenable precedent, since it would encourage future debtors to take out such loans to insulate their future earnings from their creditors. Third, it would be counter to the public policy of providing a fresh start to debtors under conditions consistent with the Bankruptcy Code. The purpose of the Bankruptcy Code is to pro-

**15.** Including their proposed retirement loan repayments, the debtors have monthly disposable income in the following amounts: At a minimum, $976.89 for Mr. Fulton; $209.08 for Ms. Turner; $404.87 for Mr. and Mrs. Dalton; and $569.33 for Mr. and Mrs. Newman.

**16.** "Substantial abuse can be predicated upon either lack of honesty 'or want of need. . . .Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. [Citations omitted.] That factor alone may be sufficient to warrant dismissal." *In re Krohn*, 886 F.2d at

126. While § 707(b) permits the Court to raise an issue of substantial abuse, *sua sponte*, the Court is hopeful that the U.S. Trustee's Office in conjunction with the panel trustees in this district will take note of this issue and will carefully scrutinize all Chapter 7 cases to prevent this type of abuse of the system. A significant factor the panel trustee should consider is whether the debtor has failed to accurately describe payments of loans to ERISA-qualified retirement accounts as disposable income so that the debtor does in fact have an ability to repay his debts.

vide a fresh start, not a fine finish. *In re Jones*, 138 B.R. at 539.

A number of bankruptcy courts have agreed with Judge Calhoun's analysis on this point. *See In re Delnero*, 191 B.R. 539; *In re Scott*, 142 B.R. 126; *In re Goewey*, 185 B.R. 444; *In re Festner*, 54 B.R. 532.

To confirm the debtors' plans in these cases on the basis of § 105(a) would, in this Court's opinion, conflict directly with *Harshbarger*. This, likewise, would contravene binding precedent set by the United States Supreme Court that bankruptcy courts are not free to use § 105 in a manner that conflicts with other bankruptcy law. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169. Accordingly, we decline to expand the use of § 105(a) for the purpose suggested here.

### Setoff

Finally, the question arises whether the right of setoff against the remaining balance in the retirement account created by the pension plans' own regulations results in the debtors' loans being secured by virtue of 11 U.S.C. §§ 506 and 553. The debtors strenuously argue that their ERISA-qualified loans are secured debts up to the value of the remaining balance in their individual retirement accounts. Under this theory, the debtors contend that the bankruptcy laws allow them to repay 100% of their ERISA-qualified retirement loans as secured claims while paying their unsecured creditors a less than 100% dividend. *See* 11 U.S.C. §§ 506(a), 1325(a)(5).

■ At first blush, this argument is beguiling. However, a thorough review of the case law on the subject, leaves the Court unpersuaded that a retirement loan is a secured claim by virtue of this form of setoff

17. 11 U.S.C. § 506 provides that:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff...."

18. 11 U.S.C. § 553 provides that:

created by the pension plans and ERISA regulations. *See supra* note 2.

Before 11 U.S.C. §§ 506 [17] and 553 [18] can be employed by the debtors in establishing a right of setoff—and therefore a secured claim—the retirement account must first have a claim against its respective debtor. Furthermore, the debtors must owe a debt to their respective retirement account. In analyzing these two statutory terms, the Court must first determine whether the loan taken against the retirement account is a "debt" under 11 U.S.C. § 101(12) so that a retirement account may be determined to be in possession of a "claim," as defined in 11 U.S.C. § 101(5), against the respective debtor's estate. This question was not answered in *Harshbarger*: "It is unnecessary to reach the question of whether, under bankruptcy law, the loan taken against debtors' ERISA-qualified account was an enforceable debt." *In re Harshbarger*, 66 F.3d at 778.

To interpret the meaning of any statute and thus ascertain Congress' intent, we must turn first to the plain language of the statute. *See Pioneer Investment v. Brunswick*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1494–95, 123 L.Ed.2d 74 (1993) ("Courts properly assume, absent sufficient indications to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'") (quoting *Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)).

11 U.S.C. § 101(12) defines "debt" as "liability on a claim" and § 101(5) defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—(1) the claim of such creditor against the debtor is disallowed."

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

In addition, the legislative history for the definitions of "debt" and "claim" indicates that the two terms are coextensive and that they do not include a policy loan on an insurance policy. *See* Report of the Judiciary Committee, S. REP. NO. 95–989 (1978), *reprinted in* App. D COLLIER ON BANKRUPTCY, pt. 4 at 1954 (15th ed. rev. 1997):

> This definition of "debt" and the definition of "claim" on which it is based, proposed 11 U.S.C. § [101(5)], does not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy. As such, the loan is not a claim (it is not a right to payment) that the company can assert against the estate; nor is the debtor's obligation a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. §§ 523 or 524.

The Second Circuit in *In re Villarie*, 648 F.2d 810 (2d Cir.1981), concluded that a policy loan on an insurance policy is analogous to a loan from a debtor's retirement account. As noted below, numerous courts have considered this same question, and each has concluded that a loan from a debtor's retirement account is not a "debt" and the pension plan administrator does not possess a "claim" against the debtor.

Although the Sixth Circuit did not squarely address the issue in *Harshbarger*, its earlier decision *In re Mullen*, 696 F.2d 470 (6th Cir.1983), does:

> We find the transaction between the [U.S. Air Force] and [debtor] to be analogous to a loan on an insurance policy. The USAF's readjustment allowance appears to be nothing more than a type of prepaid retirement benefit. Like the terms of a loan on an insurance policy, the USAF has

the right to setoff benefits that have already been paid against benefits that become payable. No interest accrued on the amount owed nor did the USAF have the right to recoup the readjustment allowance from any other source. This is the precise transaction contemplated by the legislative history of subsection [101(12)]. *In re Mullen*, 696 F.2d at 472.

Judge Calhoun came to the same conclusion in, *In re Jones*, 138 B.R. 536 (Bankr.S.D.Ohio 1991), a case, again, cited with approval by the Sixth Circuit in *Harshbarger*.

> The Debtors wish this [retirement] loan to be classified as a debt and request this Court to order that the payroll deductions be continued. Such an order would, in effect, authorize the Debtors to fully repay themselves as creditors while paying the other creditors less than 100% of the debts owed them.
>
> . . .
>
> [A]ny amounts not repaid to the [Thrift Savings Plan] are merely offset from the Debtor's future benefits.... Thus, the TSP administrator has no right to repayment, and the loan does not constitute a "claim" under 11 U.S.C. § [101(5)] nor a "debt" under 11 U.S.C. § [101(12)]; and the loan is not dischargeable in bankruptcy. By way of instruction, if the TSP administrator were to allow loans in excess of an employee's contributions, such loans would more properly be considered as "debts." *In re Jones*, 138 B.R. at 537–38.

*See also In re Villarie*, 648 F.2d 810; *In re Goewey*, 185 B.R. 444 (Bankr.N.D.N.Y.1995); *In re Scott*, 142 B.R. 126 (Bankr.E.D.Va. 1992).

The debtors cite no case law in support of their proposition that the retirement loans are secured debts. That is because none exists as far as this Court was able to ascertain from its research on the subject. Sections 506 and 553 were not intended for use by debtors to transform this type of transaction—a loan from the debtor's pension fund—into secured debt giving rise to a right of payment under § 101(5). This interpretation strains the meaning of these commonly

referenced Bankruptcy Code provisions and ignores the legislative history of § 101(12).

What the pension plans possess, as a prerequisite for the exemption under ERISA, are rights to offset funds held in a debtor's retirement account to satisfy a promissory note that is in default, and nothing more. This is the precise transaction contemplated by the legislative history of subsection 101(12), which makes it analogous to a loan on an insurance policy, and thus a transaction that is excluded from the definition of a debt under the Code. *See In re Mullen,* 696 F.2d at 472.

The right of repayment is determinative of these cases. Absent the existence of a right of repayment, there can be no "claim" and, thus, no "debt." The pension plan administrators have no right to sue any of the debtors for the outstanding balances on the loans or to collect interest, attorneys fees or other administrative costs associated with their efforts to foreclose on the defaulted notes.[19] Furthermore; none of the debtors' obligations constitute a debt (a liability on a claim) that will be discharged under the Code. *See* 11 U.S.C. §§ 523, 524, and 1328.

In short, the plans do not possess a claim against any of the debtors and, thus, the funds borrowed by the debtors from their own pension accounts do not constitute debts within the meaning of the bankruptcy laws. Accordingly, we conclude in each of the cases that "[t]he obligation on the note is not a debt in that the debtor merely withdrew money from his own account and substituted a note for the money taken." *In re Scott,* 142 B.R. at 131.

In an effort to distinguish his case from the body of law that has evolved in this area, Fulton's attorney raises a somewhat novel argument which merits only brief consideration. He asserts that cases holding that there is no right of setoff and therefore no secured claim, have failed to consider 11 U.S.C. § 102(2). Section 102(2) states that a " '*claim* against the debtor' includes *claim*

against property of the debtor" (emphasis added). However, before § 102(2) can be invoked, a "claim" must first exist.

As already determined, the pension plans in the present cases do not possess a "claim" against the debtors' property. Rather these retirement accounts have only a right to foreclose upon funds in the retirement account pursuant to the regulations contained in all the plans which are a prerequisite under the ERISA laws. When a debtor borrows money from his retirement account, he is, in essence, borrowing money from himself. The debtor is in no position to assert a right of payment against himself to establish a "claim" under the Bankruptcy Code—thereby placing himself in a secured position to the detriment of the unsecured creditors. *See In re Goewey,* 185 B.R. 444 (pre-retirement loans constitute a use of the borrower's own contributions, rather than a lending of additional funds); *In re Scott,* 142 B.R. 126. Thus, § 102(2) has no application to these cases.

All of the present cases fall squarely within the rationale of those cited above. This Court declines the invitation by these debtors to place an interpretation on §§ 506 and 553, that clearly was not intended by the Congress. We opt, instead, to join with all the other courts which have considered this issue, and conclude that funds borrowed from a debtor's pension plan do not constitute a debt, and the pension plan has no right of repayment against the debtor or the debtor's property which can be classified as a secured claim under the bankruptcy laws.

## CONCLUSION

Based on the foregoing, this Court finds unacceptable the Chapter 13 plans presented for confirmation by the debtors in each of these cases.

Accordingly, confirmation of the proposed Chapter 13 plans submitted to the Court for consideration at the hearing held March 27, 1997, by Ricky E. Fulton (Case No. 96–

---

**19.** These cases are distinguishable from *In re Miranda Soto,* 667 F.2d 235 (1st Cir.1981). In that case the First Circuit held that the debtor had established that a debt and claim existed because there was no limit on the amount the debtor could borrow from the retirement fund. Thus, the debtor borrowed funds not only from herself, but all other participants in the employer sponsored pension plan.

15806); Joan R. Turner (Case No. 96–15933); Troy R. Dalton and Rhonda L. Dalton (Case No. 96–10175) and Thomas B. Newman and Christina Marie Newman (Case No. 97–10346) are each hereby **DENIED.**

By the Court's ruling which was stated on the record at the confirmation hearing, each debtor was given 20 days, or until Wednesday, April 16, 1997, to amend their respective plan to comport with *Harshbarger* and the decision of this Court as to its applicability.

Mr. Fulton, Mr. and Mrs. Dalton and Mr. and Mrs. Newman each amended or moved to amend their respective plans on or before April 16, 1997; and, therefore, confirmation of their proposed amended plan was reset for Tuesday, April 29, 1997. The Court did not receive an amended plan for Ms. Turner on or before April 16, 1997.

At the April 29, 1997, confirmation hearing, the amended plans filed by Mr. Fulton (Doc. 23); Mr. and Mrs. Dalton (Doc. 9) and Mr. and Mrs. Newman (Doc. 13) were confirmed and a separate confirmation order has been entered with respect to those plans. Ms. Turner was given an additional seven (7) days to submit an amended plan which she has failed to do. Therefore, Ms. Turner's case is hereby **DISMISSED.**

**IT IS SO ORDERED.**